## People of the State of Illinois, Plaintiff-Appellee, v. Junior Henderson, Defendant-Appellant.

### Gen. No. 51,389.

First District, Second Division.

November 12, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Theodore Gottfried, Paul Bradley and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Theodore A. Shapero, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

After a trial without a jury, defendant, Junior Henderson, was convicted of aggravated incest [1] and sentenced to the penitentiary for a term of 5 to 10 years. Defendant appeals, contending that he was not proved guilty beyond a reasonable doubt and that the trial court made erroneous rulings as to the admissibility of certain evidence.

**Evidence for the State:**

The prosecutrix, daughter of defendant, testified that she was 14 years of age and had reached the 7th grade in school. On January 4, 1965, defendant called her into his bedroom at the family apartment located at 3318 W. Ogden Avenue, Chicago, and had sexual intercourse with her. At the time, four other members of the household were in the apartment; Everlean Golden, age 20, sister of defendant's common-law wife; Johnny Turner, age 14, a stepbrother of the prosecutrix; Mary Henderson, age 3, a half sister; and little Junior Henderson, age

---

[1] Ill Rev Stats c 38, § 11–10 (1963).

"Aggravated incest. (a) Any male person who shall perform any of the following acts with a person he knows is his daughter commits aggravated incest:

"(1) Has sexual intercourse; or

"(2) An act of deviate sexual conduct."

2, a half brother. Prosecutrix was preparing for bed at 10:00 p. m. when defendant asked her to fix some corn. She started to fix the corn, and then sat alone in the living room. Defendant called her to his bedroom and had intercourse with her. At the same time he called her into the bedroom, defendant also told her 14-year-old stepbrother to fix the bed in another room so their little brother could retire. Afterwards, she gave the corn to the defendant, and went to bed. The apartment consisted of six rooms with three bedrooms. That evening, prosecutrix shared one bedroom with Everlean Golden and Mary Henderson. Everlean had gone to their bedroom about 9:00 p. m., but was still awake after the act occurred. Prosecutrix told Everlean that she had something to tell her, but decided not to inform her. Viola Golden, who was described by prosecutrix as her mother, but actually was defendant's common-law wife, was spending the evening at a cousin's home. On January 5, 1965, prosecutrix went to the police station and on January 7, she was examined by a doctor.

She started having sexual relations with the defendant in the summer of 1962. At that time, the household consisted of her father and mother (Viola Golden), her brother and an older sister, Addie. These acts which were performed practically every weekend, continued until December 1962 and resumed in April 1964. She did not remember how many times the acts occurred each month, but thought that at least in one of the months it was 15 times or more. Ordinarily, they took place in the apartment in which the family was living, except for several instances when the acts occurred in an automobile or a house in which defendant was working.

On cross-examination, the prosecutrix testified that she spent every other weekend at her grandmother's home in Chicago. On the weekends not spent at her grandmother's home, her teen-age aunts stayed with the prosecutrix and slept with her. Everlean joined the

household in June 1964, and during 1964 Addie left the home. At times all members of the household were present in the apartment when these sexual acts occurred. When he wished to have relations with the prosecutrix, defendant would tell the other household members that he wished to talk to her in the bedroom alone. At times he would also send his common-law wife to his mother's home on the pretext that his mother wished to see her. In December 1964, her grandmother asked prosecutrix if she were pregnant, but she denied it. About the same time, an owner of a dime store accused her of taking some merchandise. Defendant paid for these items, although the prosecutrix had not taken them. She never went out evenings.

Doctor Delores Knoblock testified that she examined the prosecutrix on January 7, 1965, at the Cook County Family Court. Her examination revealed that the prosecutrix was about six months pregnant.

**Evidence for the Defense:**

Virginia Lee Askew testified that she was defendant's aunt and operated a grocery store on South Pulaski Road in Chicago. The prosecutrix and her brother used to come to her store in the evening and stay around the neighborhood until about midnight. This occurred at least 6 or 7 times during 1964.

Rosie Henderson, mother of defendant and grandmother of prosecutrix, testified that the prosecutrix spent every other weekend at her home during 1962 through 1964. On alternate weekends, Rosie's two young daughters, Ollie and Leatha, 14 and 12 years of age, would stay at the home of the prosecutrix and sleep with her.

Everlean Golden, sister of Viola, testified that she lived with the family since June 1964. On January 4, 1965, the whole family returned to the apartment at 6:00 p. m., and she was home the rest of the evening. Defendant took Viola to a cousin's home to spend the night, and he

returned about 11:00 p. m. The prosecutrix, Johnny Turner and she watched television until midnight. Everlean and the prosecutrix then retired to the bedroom which they shared with the three-year-old Mary. At this time defendant asked the prosecutrix to fix some corn. She fixed the corn, and the little brother gave it to the defendant, who was in his bedroom. Prosecutrix did not enter the defendant's bedroom. Everlean was still awake when the prosecutrix went to sleep.

Johnny Turner testified that he was 14 years of age and that defendant was his stepfather. On January 4, 1965, he and defendant took his mother to spend the night at a cousin's home. They returned about 11:00 p. m. He, Everlean, and the prosecutrix watched television in the living room, while defendant watched the same television from his bedroom. Everyone went to bed at about midnight. The prosecutrix was in the bedroom with Everlean, and Johnny Turner did not see her enter defendant's bedroom.

Defendant testified that he was 38 years of age. Viola Golden was living with him; had two children by him and was expecting a third. In December 1964, the owner of a drugstore complained that he had caught the prosecutrix taking merchandise. Defendant paid for these items. A few days later, defendant caught her bringing a stolen dress into the apartment and ordered her to stay home. On that day he had learned from Viola that prosecutrix was pregnant. He told her that he was going to take her to a doctor, and she stated that she would not go. He denied ever having sexual intercourse with his daughter. On January 4, 1965, he asked her to fix corn for him, and his two-year-old son brought the corn in to him. On January 5, 1965, he was arrested.

Defendant contends that the State failed to prove him guilty of the crime beyond a reasonable doubt. We agree.

156

■■ Where a conviction is based solely on the testimony of the complaining witness, who is a child, and the defendant denies the charge, the testimony of that witness must be clear and convincing or must be corroborated by other substantial evidence. People v. Kolden, 25 Ill2d 327, 185 NE2d 170 (1962) ; People v. Pazell, 399 Ill 462, 78 NE2d 212 (1948). And to sustain a conviction on the uncorroborated testimony of the prosecutrix, her testimony must be most clear and convincing. People v. Herzberger, 372 Ill 251, 23 NE2d 37 (1939).

In the instant case, we are not satisfied that the daughter's testimony was of such a clear and convincing nature. She testified that these sexual acts, commencing in the summer of 1962, occurred practically every weekend, and with the exception of a few instances, always at the family apartment. Yet she conceded on cross-examination that she spent just about every other weekend away from home with her grandmother. We also find it difficult to accept the testimony of the prosecutrix that during all this time, defendant was able to conceal the crime from the other members of the household by stating that he wished to talk to the prosecutrix in his bedroom or by directing his common-law wife to leave the apartment on the pretext that his mother wished to see her. Further, in December 1964, when asked by her grandmother if she were pregnant, prosecutrix denied that she was. Certainly, this was an opportunity for the daughter to reveal what had occurred. Finally, in connection with the State's evidence, an examination of the record discloses that much of the evidence was elicited from the prosecutrix by means of leading questions despite consistent objection by counsel for defendant.

The testimony of the prosecutrix becomes even less convincing in light of the evidence offered in behalf of defendant. Two members of the household testified that they were present in the apartment on the evening of

157

January 4, 1965. Everlean Golden testified that the prosecutrix was not in defendant's bedroom at any time that evening, and Johnny Turner stated that he did not see her enter defendant's bedroom at any time. Moreover, defendant denied the crime, and offered testimony as to possible bias on the part of the prosecutrix.

We conclude that the State failed to prove defendant guilty beyond a reasonable doubt. Accordingly, the judgment of the Circuit Court is reversed.

Judgment reversed.

BURKE, P. J. and LYONS, J., concur.