THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD LEE LONG, Defendant-Appellant.

Fourth District No. 14518

Opinion filed December 22, 1977.

Richard J. Wilson and Gregory K. Harris, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert C. Perry and Gary J. Anderson, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

On April 26, 1977, a Champaign County jury found the defendant, Donald Lee Long, guilty of 17 counts of indecent liberties with a child and 17 counts of aggravated incest, violations of sections 11—4 and 11—

10 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, pars. 11—4, 11—10). The court entered judgment on the verdicts and sentenced defendant to concurrent 8- to 24-year terms of imprisonment for the indecent liberties offenses with credit granted for the 281 days that defendant had already served in the county jail. On motion of the State, the aggravated incest judgments were purportedly vacated on June 15, 1977, even though a timely notice of appeal had been filed on June 8, 1977.

On August 23, 1976, Officer J. D. Reynolds, Jr., of the Rantoul Police Department received a complaint from Mrs. Linda Pitchers concerning the pregnancy of Lori Lee Schwanderman. Mrs. Pitchers was the baby-sitter for Miss Schwanderman who was the defendant's 14-year-old stepdaughter. During the course of his investigation, Reynolds contacted the State Department of Children and Family Services which arranged for Miss Schwanderman's placement in a foster home.

The defendant was arrested on August 27, 1976, and the Champaign County grand jury returned a 37-count indictment against him on October 29, 1976. Counts I and III charged that the defendant committed the offenses of aggravated incest and indecent liberties by having engaged in an act of sexual intercourse with Miss Schwanderman on March 1, 1976. Counts II and IV charged that he committed the offenses of aggravated incest and indecent liberties by having engaged in an act of sexual intercourse with Miss Schwanderman on January 2, 1976. Counts V, VI, and VII charged that defendant committed three offenses of aggravated incest by engaging in sexual intercourse with his natural daughter, Loreda Warren, sometime between September 1, 1975, and March 1, 1976. The even-numbered counts from VIII through XXXVI charged defendant with 15 aggravated incest offenses by engaging in monthly acts of sexual intercourse with Miss Schwanderman during the period from October 1974 through December 1975. The odd-numbered counts from IX through XXXVII charged defendant with 15 indecent liberties offenses by engaging in monthly acts of sexual intercourse with Miss Schwanderman during the period from October 1974 through December 1975.

After accepting the court's appointment of counsel and after pleading not guilty to all counts of the indictment, the defendant filed a motion for a bill of particulars alleging that he was unable to adequately prepare his alibi defense because imprecise dates had been listed for all but two of the 37 counts of the indictment. In granting the motion, the court stated: "With respect to Count 1, Count 2, Count 3 and Count 4, the motion is granted and the [P]eople are to furnish the places, time hour of day, and the date within reasonable certainty. On counts 5, 6 and 7, the people are to specify the month, week day of the month the place and any event to a

reasonable degree of certainty. With respect to Counts 8 through 37, the people are to specify the wee[k] and month or any event and the place within a reasonable degree of certainty." The State responded in its bill of particulars by saying that the act alleged in counts I and III occurred approximately one week prior to defendant's hospitalization for a heart ailment on March 7, 1976, although the victim was unable to recall the precise date. The offense was alleged to have occurred in defendant's bedroom in the family trailer at Klein or Cline Acres Trailer Park, Rantoul, Illinois, at approximately 7 or 8 p.m. The act charged in counts II and IV was alleged to have occurred at the same location around 7 or 8 p.m. on January 2, 1976. The three acts charged in counts V, VI, and VII, were alleged to have been committed with Loreda Warren a few days prior to Thanksgiving, 1975, during February 1976, and on a third date between late October 1975 and early March 1976. Each of these three acts occurred at approximately 10 or 11 p.m. in the bedroom occupied by Miss Schwanderman and Mrs. Warren in the family trailer at Klein or Cline Acres Trailer Park. The acts charged in counts VII through XXXVII were particularized in the following manner: "All the acts of intercourse alleged in Counts VII-XXXVII occurred in the family home. From October 1974 until late October 1975 the family home was a trailer in Shulls [sic] Trailer Court, Rantoul, Illinois. After late October 1975, the family home was in a trailer at Klein Acres Trailer Park, Rantoul, Illinois. At Shulls [sic] Trailer Park the acts of sexual intercourse occurred at least once every month and probably as often as every two weeks. They took place in either Donald Lee Long's bedroom, Lori Lee Schwanderman's bedroom, or the bathroom. Most of the incidents occurred sometime during the evening hours but on several occasions the act of sexual intercourse would take place in the early morning hours in Lori Schwanderman's bedroom. At Klein Acres the act of sexual intercourse took place at least once each month in either the master bedroom of Donald Lee Long or in Lori Lee Schwanderman's bedroom, those incidents occurring during the evening hours. The only specific incident that Lori Schwanderman is able to recall is that an act of sexual intercourse occurred during the early morning hours on the day during the spring of 1975 that she took a trip to Six Flags. No member of the family has been able to pinpoint the date of that trip. Otherwise Lori Schwanderman is unable to pinpoint the dates of the occurrences alleged in Counts VIII-XXXVII. She can only state with great certainty that her step-father, Donald Lee [L]ong engaged in an act of sexual intercourse at least once during each of the months October 1974—December 1975 and that during most of this period these acts of intercourse took place more than once each month."

The cause was called for trial on April 20, 1977, and prior to selection of the jury, the defense presented motions to dismiss and to sever counts V through VII which involved defendant's alleged activity with Loreda Warren. The State filed a motion *in limine* seeking to exclude evidence relating to Miss Schwanderman's reputation for unchastity and relating to her sexual activity with anyone other than the defendant. While it denied the motions to dismiss, the court granted the motion to sever counts V through VII and the motion *in limine.*

The prosecutrix, 15½-year-old Lori Lee Schwanderman, testified that she has resided with the defendant since he and her mother were married approximately eight years ago. Over defendant's objection, the witness stated that she has participated in an ongoing sexual relationship with the defendant since she was approximately 9 or 10 years old and living with the family in Fisher, Illinois. From approximately October 1971 to October 1974, when the family resided at the Malloy Trailer Court, the witness stated that she and the defendant engaged in weekly acts of intercourse either during the evening hours when her mother was at work or in the morning when her mother was asleep. When the family moved to the Schull Mobile Home Park in October 1974, the acts of intercourse continued at biweekly intervals. The witness testified that her boyfriend frequently visited her at home during 1975 and that he often stayed overnight with her at the trailer. At some time when the "weather was cold," the defendant expelled the boyfriend from the trailer and told him never to return. The witness recalled that on May 20, 1975, she went to the Six Flags Amusement Park in St. Louis with a group of Girl Scouts. Prior to driving her to the group's bus that morning, the defendant engaged in another act of intercourse with the witness. In October 1975, the family moved to the Cline or Klein Acres Trailer Park where the acts of intercourse continued at approximately monthly intervals. On one occasion, the witness and defendant were discovered by the witness' half brother Wilbur and stepsister Loreda in defendant's bedroom. Loreda corroborated the witness' testimony by saying that after she entered the room, defendant sat on the edge of the bed with his belt unbuckled while Miss Schwanderman squatted in a closet with her slacks pulled down to her knees. On another occasion, Loreda observed a man lying on top of Miss Schwanderman in the bedroom Loreda shared with her. Although Loreda could not see the man's face, she did see the defendant emerge from the bedroom a few moments after she burst in upon the couple. After defendant left the room, Loreda walked in and pulled the covers from the bed, exposing Miss Schwanderman whose nightgown was pulled up to her waist.

Miss Schwanderman testified that defendant had intercourse with her

again on January 2, 1976, when her three brothers were home and on another occasion approximately one week prior to defendant's hospitalization on March 7, 1976.

On December 18, 1976, Miss Schwanderman gave birth to a child. She stated that during 1976, she engaged in sexual intercourse only with the defendant.

Miss Schwanderman testified that the defendant was home approximately two days out of every week. She stated that she told her mother of her acts of intercourse with the defendant and his father; however, her mother did not believe her. She stated that the defendant threatened to put her in a school if she told anyone and that, after she became pregnant, he threatened to kill her if she revealed the paternity of her child.

After the State rested, the defendant put on an alibi defense to establish that the defendant took elaborate precautions to avoid Miss Schwanderman's allegations. Defendant's parents, sister, and niece testified that he spent nearly every moment that his wife was working with them either playing cards or working on cars. Both the defendant and his father denied having intercourse with Miss Schwanderman. Other defense witnesses testified that Miss Schwanderman's reputation for truth and veracity in the community was bad. Still other witnesses testified that they attended an evening housewarming party at the Long trailer on January 2, 1975, and that neither Miss Schwanderman nor her half brothers were present on that occasion.

After defendant was found guilty of 17 counts of indecent liberties and 17 counts of aggravated incest, a sentencing hearing was conducted by the court. At that hearing, Loreda Warren testified that she engaged in acts of intercourse with the defendant on three occasions between Thanksgiving, 1975, and February 1976, and other acts of sexual intercourse between 1969 and 1972. A Champaign County probation officer, Lester Mulvaney, testified concerning a presentence report in which he recommended that the defendant not be sentenced to probation. Finally, the prosecutrix testified in aggravation and the defendant testified in mitigation, again denying his guilt. Sentence was then imposed by the court.

On appeal, we are faced with essentially nine issues: (1) Whether defendant has waived the formal defect caused by the miscitation of section 11—4 in the odd-numbered counts from IX to XXXVII in the indictment; (2) whether counts VIII through XXXVII are void for stating imprecise dates of the offenses, thereby preventing defendant from preparing an adequate defense; (3) whether defendant was prejudiced by the introduction of evidence tending to prove that he committed crimes that were not specified in the indictment; (4) whether the trial court

abused its discretion in refusing to admit evidence concerning defendant's motives in avoiding the prosecutrix; (5) whether the trial court abused its discretion in refusing to admit evidence concerning the bias of Linda Pitchers, a State witness; (6) whether defendant's guilt was proved beyond a reasonable doubt; (7) whether the trial court abused its discretion in permitting Loreda Warren to testify at the sentencing hearing concerning her sexual activities with the defendant; (8) whether the trial court abused its discretion by imposing an excessive sentence; and (9) whether the trial court had power to vacate the aggravated incest convictions after a notice of appeal had been filed.

Among other things, an indictment must be in writing and must cite the statutory provision alleged to be violated. (Section 111—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 111—3).) It is clear, however, that an indictment shall not be dismissed and may be amended at any time to correct a formal defect including any miswriting. (Section 111—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 111—5(a)); *People v. Foster* (1975), 32 Ill. App. 3d 1009, 1011-12, 337 N.E.2d 90 (section 111—5's list of formal defects is not exclusive).) In *People v. Dismore* (1975), 33 Ill. App. 3d 495, 498-99, 342 N.E.2d 151, 154, the court held that citation of a repealed section of the Criminal Code which had been reworded and incorporated in another legislative enactment was a formal defect that did not require reversal of a conviction. In *People v. Parr* (1970), 130 Ill. App. 2d 212, 219-20, 264 N.E.2d 850, citation to the incorrect chapter and section in a complaint was also held to be a formal defect. In *People v. West* (1970), 128 Ill. App. 2d 63, 67-68, 262 N.E.2d 323, the court held that a 111—5(a) formal defect was waived by the defendant's failure to make a timely challenge to the defect.

■■ In the instant case, the odd-numbered counts of the indictment from IX to XXXVII incorrectly state that defendant committed the offenses of indecent liberties in violation of section 11—10 of the Code instead of section 11—4. Defendant, however, has at no time objected to that formal defect and we therefore, on the authority of *West*, find that defendant has waived his right to object to the defect.

In regard to the second issue, defendant alleges that counts VIII through XXXVII of the indictment are void because they lacked specific dates for the alleged offenses, thereby preventing defendant's formulation of an adequate defense. Section 111—3(a)(4) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 111—3(a)(4)) provides that an indictment or other criminal charge shall set forth the date and county of the offense as definitely as can be done. Although the State is not required to prove the precise date on which the offense occurred, the indictment must at least give some indication as to when the offense

occurred. *People v. Rohde* (1949), 403 Ill. 41, 85 N.E.2d 24; *People v. Taylor* (1945), 391 Ill. 11, 62 N.E.2d 683.

■■ In *People v. Blanchett* (1965), 33 Ill. 2d 527, 212 N.E.2d 97, our supreme court held that the failure to specify an exact street address for the offense did not result in a void information. The *Blanchett* court noted that, while an earlier version of section 111—3(a)(4) required that the time and date of the offense be stated with "reasonable certainty," the legislature's action in replacing that language with the words "as definitely as can be done" did not impose an additional burden on the State. Today, the primary goal in charging an offense is simplicity in order that the accused will be able to understand the charge against him. The time and place of the offense are separate and distinct from the more important requirement that the nature and elements of the offense be stated. (33 Ill. 2d 527, 533-34, 212 N.E.2d 97; *People v. Mahle* (1974), 57 Ill. 2d 279, 283, 312 N.E.2d 267; *People v. Gilmore* (1976), 63 Ill. 2d 23, 28-29, 344 N.E.2d 456.) *Blanchett* and its progeny, however, left the question presented in the instant case unanswered. While a bill of particulars cannot cure a void charge, it can be used to protect the defendant in a case in which he is unable to formulate his defense. Here, however, defendant contends that the State's bill of particulars was so inadequate as to prevent him from formulating an effective alibi defense.

■■ Ordinarily, when a child is the victim of crime, a parent or guardian will be ready to confirm details such as the date and place of the incident. In the instant case, however, the victim's one parent was the alleged aggressor and the other parent, although informed of the sexual activity by the victim, refused to believe the victim's allegations. If illicit acts which are repeatedly committed in the supposed security of the home by a parent against a child are to be effectively punished and deterred in accordance with our criminal laws, a degree of flexibility must be given to section 111—3(a)(4)'s requirement that the defendant be charged with having committed the offense on a certain date.

■■ It is clear to us that the defendant in the instant case was not prejudiced or precluded from presenting an adequate defense. The heart of defendant's case was that he was *never* home alone with the victim because he feared her continued accusations of sexual misconduct; however, the jury's verdict would not have been altered by the inclusion of more specific dates in counts VIII through XXXVII. The defendant's story that, for a period of approximately five years, he was never home alone with the victim did not cause the jurors to have a reasonable doubt as to his guilt. Therefore, knowledge of the precise day of the month alleged in each of the counts was not basic to the defense presented in this particular case. *People v. Patrick* (1967), 38 Ill. 2d 255, 259, 230 N.E.2d

843; *People v. Schmidt* (1957), 10 Ill. 2d 221, 226, 139 N.E.2d 726; *People v. O'Connell* (1966), 76 Ill. App. 2d 389, 393, 222 N.E.2d 165.

The day has passed when an indictment defined the limits of jeopardy. Today, a prior prosecution may be proved by reference to the record thereby protecting the defendant from being twice placed in jeopardy. (*Gilmore; People v. Jones* (1973), 53 Ill. 2d 460, 464, 292 N.E.2d 361, 363; *Accord Brown v. Ohio* (1977), 432 U.S. 161, 167 53 L. Ed. 2d 187, 194, 97 S. Ct. 2221, 2225.) We believe that the offenses for which the instant defendant is being punished can be easily discerned by referring to the record before us. Clearly, the defendant does not allege that he has already been subjected to double jeopardy. In the absence of such a prosecution or other prosecutorial harassment, we need not finally dispose of the question as to whether the proof presented is sufficient to avoid a double jeopardy problem. *People v. Knapp* (1959), 15 Ill. 2d 450, 155 N.E.2d 565.

■■■ Defendant contends that the prosecutrix's testimony detailing her ongoing sexual relationship with the defendant from age 9 or 10 improperly permitted evidence of crimes beyond the scope of the indictment to be presented to the jury. Our supreme court has, however, stated: "The general rule is that proof of other acts is inadmissible unless they are a part of the *res gestae*. But an exception, as well established as the rule, is, that in the trial of a defendant for the commission of a crime involving sex relations, evidence of prior offenses between the defendant and the complaining witness is admissible for the purpose of showing the relation of the parties and to corroborate the testimony of the complaining witness concerning the particular act." (*People v. Kraus* (1946), 395 Ill. 233, 237, 69 N.E.2d 268; *People v. Richardson* (1959), 17 Ill. 2d 253, 259, 161 N.E.2d 268.) It also appears to us that a majority of jurisdictions follow this or a similar rule. (See Annot., 167 A.L.R. 565 (1947); Annot., 77 A.L.R.2d 841 (1961).) We are bound to follow previous decisions of our supreme court (*Agricultural Transportation Association v. Carpentier* (1953), 2 Ill. 2d 19, 27, 116 N.E.2d 863), and, accordingly, we find no error in the admission of the prosecutrix's testimony concerning her ongoing sexual relationship with the defendant.

At the same time, however, we are cognizant of well-reasoned authority from at least one other jurisdiction which is directly contrary to the exception applied by our supreme court in *Kraus, Richardson* and other cases. (*Commonwealth v. Boulden* (1955), 179 Pa. Super. 328, 340-48, 116 A.2d 867, 873-76; *cf.* Fed. R. Evid. 404(b) (a general rule of exclusion concerning proof of character with nine exceptions noted).) We are also troubled by the inconsistencies suggested by our comparison of *Kraus* with *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695,

and its progeny. There appears to be a serious inconsistency in admitting the testimony of a complaining witness as to the occurrence of any sex offenses perpetrated by the defendant on that witness whether resulting in convictions or not while, at the same time, severely limiting impeachment of witnesses by evidence of criminal convictions in the manner described in *Montgomery* and *People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058 (majority opinion of Craven, P.J., Reardon, J., specially concurring, Kunce, J., dissenting); see McCormick Evidence §§42, 43, at 82-90 (2d ed. 1972).

The trial court refused to permit defendant to introduce the testimony of Doris Roberts, Sharon Logan, Linda Lou Long, and Iva Long which would have allegedly established defendant's motive in avoiding the prosecutrix throughout the period covered in the indictment. The defendant's offers of proof reflect that these witnesses would have testified that defendant took elaborate precautions to avoid being accused of incest by the prosecutrix. In this case, however, the defendant testified in regard to his motive in avoiding the prosecutrix during most of the period he was married to her mother. Although defendant's witnesses did not so testify, it is clear from the defendant's offers of proof that their testimony would have merely been cumulative in nature and, at best, hearsay.

Defendant has asked us to construe the cases of *People v. Reddock* (1973), 13 Ill. App. 3d 296, 300 N.E.2d 31, and *People v. Cole* (1975), 29 Ill. App. 3d 369, 329 N.E.2d 880, which he argues are contradictory. Both *Reddock* and *Cole* note that hearsay testimony recalls an out-of-court statement of another and is offered to prove the truth of matters asserted in the out-of-court statement. The problem associated with the use of hearsay testimony is that the adverse party does not have an opportunity to cross-examine the actual party whose statement is being offered into evidence, the out-of-court declarant. In the instant case, the out-of-court declarant was the defendant and he actually testified in his own defense as to his reason for avoiding the prosecutrix. While *Reddock* did indeed recognize a "present state of mind" exception to the hearsay rule, an exception that the majority did not discuss in *Cole*, the *Reddock* court limited the use of such hearsay testimony to instances in which: (1) the declarant is not available to testify; and (2) there is a reasonable probability that the proffered hearsay statements are truthful. Other courts have held it to be harmless error to permit hearsay testimony if the declarant has competently testified to the out-of-court assertion. *People v. Robinson* (1977), 52 Ill. App. 3d 658, 367 N.E.2d 1034; *People v. Breitweiser* (1976), 38 Ill. App. 3d 1066, 1070-71, 349 N.E.2d 454; *compare* Fed. R. Evid. 803(1), (2), (3).

■■ Defendant's witnesses were offered by the defense prior to

defendant's testimony regarding his reasons for avoiding the prosecutrix. These witnesses, therefore, could not have testified that the defendant previously made statements to them which were in accord with his testimony at trial. The record does not reflect and counsel does not contend that the defendant was forced to testify because his alibi witnesses were unable to testify. While it appears that the court erred in excluding that testimony, it is clear that the error was harmless in nature because the defendant later testified to his reasons for avoiding the prosecutrix.

Defendant alleges that the trial court abused its discretion in refusing to allow defense counsel to question Linda Pitchers about statements she had made concerning the manner in which she obtained custody of her adopted daughter (*i.e.*, by "causing trouble" for the child's natural parents), about allegations that she had said she would repeat those tactics to obtain another child and about allegations that she had asked the defendant and his wife to draw up papers giving custody of the prosecutrix's child to Mrs. Pitchers. Defendant contends that his counsel should have been permitted to ask these questions in order to establish the bias and testimonial motivation of Mrs. Pitchers.

We note, however, that Pitchers was a rebuttal witness for the State who was called for the sole purpose of establishing that the defendant's children were not at her home on January 2, 1976, a date on which some of the offenses were alleged to have occurred. Pitchers was not a part of the State's case-in-chief. Mr. Justice Schaefer has appropriately stated that: "There has been an increasing tendency in criminal cases to try some person other than the defendant, and some issue other than his guilt." (*People ex rel. Sears v. Romiti* (1971), 50 Ill. 2d 51, 55, 277 N.E.2d 705.) It is for this reason, among others, that a reviewing court will not interfere with a trial court's ruling concerning the latitude of allowable cross-examination unless that ruling constitutes an abuse of discretion and prejudices the defendant. *People v. Hanks* (1974), 17 Ill. App. 3d 633, 636, 307 N.E.2d 638.

■■ In the instant case, it is clear that the State presented Pitchers for the limited purpose of showing that the prosecutrix was not staying with her on January 2, 1976. With this in mind, we decline to meddle with the trial court's exercise of discretion in limiting defendant's examination of the witness.

In *People v. Richardson* (1959), 17 Ill. 2d 253, 161 N.E.2d 268, a case involving convictions for indecent liberties and contributing to the delinquency of a child, our supreme court stated: "While this court has expressed some reluctance to permit a conviction to stand on the uncorroborated testimony of a prosecuting witness in a case of this nature, (see: *People v. Martin*, 380 Ill. 328; *People v. Pazell*, 399 Ill. 462)

we have said that where such testimony is clear and convincing it is sufficient to sustain a conviction although the testimony is not corroborated. (*People v. Williams*, 414 Ill. 414; *People v. Halteman*, 10 Ill. 2d 74.) In this case we are not called upon to make such a determination." (17 Ill. 2d 253, 257-58, 161 N.E.2d 268.) In *Richardson*, the defendant confessed to his indecent acts, thus corroborating the prosecutrix's testimony while in *Halteman*, the defendant volunteered an incriminating statement to the prosecutrix's parents. *Richardson* does not manifest the court's abandonment of the long-standing rule that requires some sort of corroboration of the complaining witness' testimony in indecent liberties cases. What is required is that the complaining witness' testimony be either corroborated or otherwise clear and convincing. *E.g., People v. Henderson* (1968), 102 Ill. App. 2d 152, 157, 243 N.E.2d 605, 607.

In the instant case, defendant has contended that his guilt was not proved beyond a reasonable doubt because the State's case was based on what defendant describes as the prosecutrix's uncorroborated and imprecise charges. We, however, disagree with defendant's conclusion because the prosecutrix's testimony was clear and convincing in the critical areas and because it was substantially corroborated by the testimony of Loreda Warren.

Mrs. Warren testified to having sent one of defendant's sons to take a bath while the family was living at the Cline or Klein Acres Trailer Park. The boy entered defendant's bedroom to retrieve a towel, but defendant ordered him to extinguish the light. When Mrs. Warren entered the room, she discovered defendant sitting on the bed with his belt undone. The prosecutrix was squatting on the floor of the closet. Her slacks were pulled down to her knees and she was nude from her waist to her knees. On another occasion at the same trailer park, Mrs. Warren entered the bedroom she shared with the prosecutrix at approximately 10:30 p.m. After illuminating a light in the room, she quickly extinguished it because she observed a man she thought to be the defendant lying atop the prosecutrix. She observed neither party's face at that time, but she did observe defendant emerging from the room a few minutes later. Mrs. Warren entered the bedroom where the prosecutrix was pretending to be asleep, pulling the covers from the prosecutrix whose nightgown was pulled above her waist. Throughout this incident, the only persons in the bedroom were Mrs. Warren, her infant daughter, the prosecutrix and the defendant.

■■ We are not convinced that the result in *Henderson* controls our disposition of the instant case. In *Henderson*, not only was there no corroborating evidence, but there were two defense witnesses who claimed to be at the scene when the acts were alleged to have taken place. That situation is, of course, not present in the instant case. The

prosecutrix's clear and convincing testimony was substantially corroborated by Mrs. Warren's observations on two separate occasions. The fact that the prosecutrix gave birth to a child on December 18, 1976, corroborates her story of having intercourse with someone during that year. The identity of the man with whom she had intercourse and the credibility of defendant's alibi witnesses were proper questions which the jury resolved here.

We will disturb a jury's finding of guilt only when the evidence is so improbable as to leave a reasonable doubt as to that guilt. (*People v. Rogers* (1975), 31 Ill. App. 3d 981, 986, 335 N.E.2d 48; *People v. Abbott* (1977), 55 Ill. App. 3d 21, 370 N.E.2d 286.) Here, to reach verdicts of guilty, the jury rejected defendant's claim that he never allowed himself to be alone with the prosecutrix or with the prosecutrix and his three sons for a period in excess of five years. The defendant undermined his claim by testifying that he drove the prosecutrix, alone, to meet a bus that was transporting the prosecutrix and a number of Girl Scouts to the Six Flags Amusement Park in May 1975. The prosecutrix testified that defendant had sexual intercourse with her just prior to the bus trip. In addition, the jury could have easily found that the truth of defendant's claim was seriously eroded by his crude admission on cross-examination that, while living at the Schull Trailer Park in 1975, he entered the bathroom while the prosecutrix was taking a shower in order to discover why the prosecutrix was making a commotion. Although two adult women were present in the trailer, including his wife, defendant pulled the shower curtain back to see precisely what the prosecutrix was doing.

■■ Defendant contends that he was prejudiced by Mrs. Warren's testimony at the sentencing hearing in regard to her allegations that the defendant engaged in sexual intercourse with her. Defendant also correctly notes that Mrs. Warren's testimony encompasses matters alleged in counts V through VII of the indictment and that, on the opening day of the trial, the court granted a motion to sever those counts. In response, the State contends that defendant waived this alleged error by failing to object to Mrs. Warren's testimony at the hearing and by failing to include it in his written post-trial motion. In addition, the State contends that the alleged error did not amount to plain error because it was not so prejudicial as to deny defendant's right to a fair hearing. Alternatively, the State argues that Mrs. Warren's testimony was properly admitted because defendant strenuously argued for a sentence of probation and, when considering an application for probation, arrests not resulting in convictions may be considered at the sentencing hearing. *People v. Profit* (1976), 37 Ill. App. 3d 918, 919, 347 N.E.2d 67; *People v. Taylor* (1973), 13 Ill. App. 3d 974, 975, 301 N.E.2d 319, 320.

On the authority of *Taylor*, we hold that the trial court did not err in

allowing Mrs. Warren to testify concerning defendant's sexual activity with her. We also recognize that defendant waived any right to object on appeal to Mrs. Warren's testimony because he did not preserve that issue for our review. (*People v. Sparks* (1975), 26 Ill. App. 3d 278, 281, 325 N.E.2d 49.) Because of our holding in *Taylor*, we also are unable to say that the admission of Mrs. Warren's testimony amounted to plain error under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)).

Defendant contends that his concurrent sentences of 8 to 24 years' imprisonment are excessive and reflect an abuse of discretion by the trial court. Defendant emphasizes that his prior record reflected no arrests or convictions, that he has been employed for many years and that he has a reputation for being a hard worker. The record also reflects that members of the community volunteered favorable assessments of his character despite their knowledge of the charges underlying the instant convictions.

■■ Section 5—8—1(c)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(c)(2)) provides that the minimum term of imprisonment for the offenses involved herein "* * * shall be 4 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term." Here, the court was advised as to all of these factors and the record does not bear any indication that the trial court abused its discretion in imposing a sentence having a minimum term in excess of 4 years. While we recognize that Supreme Court Rule 615(b)(4) (58 Ill. 2d R. 615(b)(4)) authorizes this court to reduce or modify sentences imposed by trial courts, we also recognize that the rule does not authorize this court to tinker with sentences or to substitute its judgment for that of the trial judge. *People v. Hines* (1976), 44 Ill. App. 3d 204, 206, 357 N.E.2d 884, 885.

■■ Finally, we note that the trial court, on the State's motion, vacated the judgments entered on the jury's aggravated incest verdicts on June 15, 1977, subsequent to defendant's filing of a notice of appeal on June 8, 1977. It is clear, therefore, that the trial court lacked jurisdiction of the case on June 15, 1977, and that its action of that date was void from the moment that it was purportedly entered. (*City of Chicago v. Myers* (1967), 37 Ill. 2d 470, 472, 227 N.E.2d 760; *People v. Kleba* (1971), 1 Ill. App. 3d 563, 565, 275 N.E.2d 174.) It is clear to us that the aggravated incest judgments should have been vacated by the trial court. *People v. Schlenger* (1958), 13 Ill. 2d 63, 147 N.E.2d 316; see generally *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

For the foregoing reasons, we affirm defendant's convictions for taking indecent liberties with a child and the sentences imposed thereon. We

remand the cause to the trial court for entry of an order vacating the judgments of conviction entered on the jury's aggravated incest verdicts.

Affirmed in part. Remanded with directions.

CRAVEN and MILLS, JJ., concur.