THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SALAHUDDIN A. MUHAMMAD, Defendant-Appellant.

First District (2nd Division)   No. 83—0976

Opinion filed April 23, 1985.—Rehearing denied May 28, 1985.

James J. Doherty, Public Defender, of Chicago (Patricia J. Handlin, As-
sistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Karen C. Wirth, and Edward V. Edens, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

The defendant, Salahuddin A. Muhammad, was charged by indictment with nine criminal counts, including two counts of murder, three counts of armed violence, three counts of aggravated battery, and one count of attempted murder. Prior to trial, the State dropped one count of armed violence based upon great bodily harm (Ill. Rev. Stat. 1979, ch. 38, pars. 33A—2, 9—1(a)(2)), and proceeded on all other counts. A jury found the defendant guilty on all counts, and the court vacated all but the murder and attempted murder convictions. The defendant was sentenced to 30 years for the murder of George Gayles and 30 years for the attempted murder of Ava Williams, the sentences to run concurrently.

On appeal, the defendant raises the following points of error: (1) that the defendant was denied his right to a fair and impartial jury and the right of peremptory challenge by the court's refusal to question prospective jurors about their opinions concerning the use of deadly force for self-defense; (2) that the defendant was not proved guilty beyond a reasonable doubt; (3) that the trial court erred when it denied the defendant's request to have the complainant, Ava Williams, fingerprinted to check for a possible criminal record; (4) that the court erred in failing to *sua sponte* instruct the jury on voluntary manslaughter; and (5) that the court abused its discretion in sentencing the defendant to concurrent terms of 30 years for attempted murder and murder. We affirm the convictions and the sentences.

The defendant was working at a newspaper stand on the corner of 75th and Exchange streets in the city of Chicago, in the early morning of July 19, 1981. Also present was a Mr. Malek and Yusef Ali. The defendant carried a .357 Magnum revolver that he used while employed as a part-time security guard and because he believed that the newsstand was in a high-crime area. In his words, "At that location we handle a lot of money, and that is a bad location."

At about 4:30 a.m., the complainant, Ava Williams, came to the corner where the newsstand was located. She stood on the corner at a bus stop and against the newspaper stand. What happened next is disputed. The defendant testified that he left the stand, walked over to Williams, and asked if he could help her. They had a "few words," she said something to Malek, and she left. Williams testified that she

was standing on the corner because she was looking for her boyfriend, George Gayles, who had left their apartment about an hour earlier to buy liquor. Williams testified that the defendant called her a prostitute, which she denied, and that the defendant "called me a bitch and told me that I better be off the corner when he gets back."

Whatever the contents of their conversation, Williams left and found Gayles, who had just bought a bottle of beer at a liquor store across the street. Williams told Gayles what happened, and they both returned to the defendant's stand. Police Officer Jerry Johnson, who knew Gayles and saw him at the liquor store minutes before the shooting, testified that, in his opinion, Gayles was "cold sober." The coroner's report, however, showed that Gayles had "an alcohol level of 208 mg.% in his blood."

While Gayles' condition is disputed, it is not disputed that Gayles demanded an apology from the defendant, who tried to ignore him. The defendant may have grabbed the front of Gayles' shirt, although that is unclear, but it is clear that Gayles hit the defendant's head with the bottle that he was carrying.

What happened next is disputed and is the heart of the case. The defendant testified that after he was hit, he felt dizzy and weak and that his head was bleeding. According to the defendant, Malek grabbed Gayles and they struggled to the ground, with Williams then jumping on top of Malek. The defendant told Malek to release Gayles, which he did, but Gayles, in the words of the defendant, "came at me, lurged [sic] at me with his hands up." In response, the defendant drew his revolver and fired four shots in rapid succession, two at Gayles and two at Williams because the defendant allegedly saw her make a "fast move" out of the corner of his eye. The defendant did not explain specifically what this movement was or whether he perceived it as threatening, but that is the implication of his testimony.

Williams, on the other hand, testified that after the defendant was struck in the head with the bottle, he drew his gun and fired three shots, one at Gayles and two at her. According to Williams, the defendant shot Gayles, shot her in the neck, knocking her down, and then walked over to her and shot her again as she was lying on the sidewalk.

Officer Johnson, who was off-duty and in the liquor store when the shooting occurred, testified that he heard two shots in succession. He went outside, saw the prone bodies, went back inside the store and called 911, relayed the information, went back outside, and saw the defendant walk over to the victims and fire another shot into each of them. Johnson walked toward the stand and stopped in the middle

of the intersection, which has a railroad crossing. He crouched behind the railroad crossing signal, identified himself, and told the defendant to drop the gun. He repeated the message. Finally, Johnson came up behind the defendant, placed his revolver in the defendant's back, and arrested him. The incident was over: George Gayles was dead, and Ava Williams is now a quadriplegic.

The defendant was taken into custody and questioned by Assistant State's Attorney Henry Lazzaro at about 9:30 a.m. He informed the defendant of his rights, and he later signed a written statement. At trial, Lazzaro testified that the defendant admitted to him that "he shot them to make sure that they were dead and the reason he shot them was to make an example for the other pimps and prostitutes in the neighborhood ***." This admission was later put in writing and signed by the defendant.

At trial, the defendant admitted that he shot the victims, but that he was acting in self-defense. The jury found him guilty and he was sentenced to 30 years for murder and 30 years for attempted murder, the sentences to run concurrently. The defendant filed this timely appeal.

I

In the pre-*voir dire* conference, which was not transcribed, the defendant offered two questions for the court's consideration. They were:

> "1. Would the fact that the complainant Ava Williams is paralyzed prevent you from requiring the State to prove beyond a reasonable doubt that Mr. Muhammad was not acting in self-defense?
>
> 2. Will you be able to follow the law that a person may use deadly force if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself?"

The court asked the venire the first question but refused the second. The court instead told the venire members that they would be instructed on the law at the proper time and that, once the law was given to them, it would become their duty to accept it as proper, regardless of their own feelings. Additionally, each juror was asked whether he could follow the law as given. After the verdict, the defendant filed a motion for a new trial, claiming that the court erred in refusing to ask the second proffered question.

■ Defendant does not cite any Illinois case in support of his contention. We find no Illinois case that confers upon a defendant the

right to a question in *voir dire* which would probe the potential jurors' attitudes toward the justifiable use of deadly force in defense of person.

The *voir dire* examination of jurors is governed by Supreme Court Rule 234 (87 Ill. 2d R. 234). The rule states in part:

"The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or may permit the parties to supplement the examination by such direct inquiry as the court deems proper. *Questions shall not directly or indirectly concern matters of law or instructions.*" (Emphasis added.)

The purpose of *voir dire* is to permit counsel "to ascertain whether the minds of prospective jurors are free from bias or prejudice." (*People v. Stack* (1984), 128 Ill. App. 3d 611, 616, 470 N.E.2d 1252.) In determining what is proper questioning, the court must provide an opportunity to probe potential prejudice and yet avoid attempts at indoctrination or education. (*Gasiorowski v. Homer* (1977), 47 Ill. App. 3d 989, 365 N.E.2d 43.) The manner and scope of the questioning is within the court's discretion. *People v. Teague* (1982), 108 Ill. App. 3d 891, 894, 439 N.E.2d 1066, *cert. denied* (1983), 464 U.S. 867, 78 L. Ed. 2d 179, 104 S. Ct. 206.

In this case, the second of defendant's proffered questions was clearly prohibited by rule. In construing Rule 234, our reviewing courts upheld the trial court's refusal to ask questions on *voir dire* dealing with self-defense in murder prosecutions. *People v. Bradley* (1981), 97 Ill. App. 3d 1100, 1102, 424 N.E.2d 33, *appeal denied* (1981), 85 Ill. 2d 578, and *People v. DeSavieu* (1983), 120 Ill. App. 3d 420, 427-28, 458 N.E.2d 504, *appeal denied* (1984), 99 Ill. 2d 531.

Our supreme court has ruled that a court's failure to ask supplemental questions concerning a defendant's privilege against self-incrimination, the State's burden of proof, and the presumption of innocence required a new trial because each of those inquiries "goes to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury." (*People v. Zehr* (1984), 103 Ill. 2d 472, 477, 469 N.E.2d 1062.) That is not the case before us. The *Zehr* questions concerned constitutional rights that are fundamental to the criminal justice system. The question proffered here, in contrast, neither concerns a constitutional right nor the right to a fair and impartial jury. Rather, it concerns a question of law to which the jury was instructed when all the evidence was presented. Thus, the trial court did not err in refusing to ask the question.

## II

■ The defendant also claims that his convictions should be reversed because the evidence was insufficient to convict him beyond a reasonable doubt. Generally, a criminal conviction will not be reversed unless the evidence is so improbable that a reasonable doubt about the defendant's guilt is raised. (*People v. Vriner* (1978), 74 Ill. 2d 329, 342, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.) The testimony of a single credible witness is enough to sustain a conviction, even when that testimony is contradicted by the accused. (*People v. Sullivan* (1970), 46 Ill. 2d 399, 401, 263 N.E.2d 38.) A court of review will not substitute its judgment for that of the trier of fact when the evidence is merely conflicting. *People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733.

In his brief, the defendant essentially reargues the same facts that were considered by the jury. He also attacks the credibility of the prosecution witnesses. The weight and credibility to be given their testimony is for the trier of fact to determine. *People v. Novotny* (1968), 41 Ill. 2d 401, 411-12, 244 N.E.2d 182.

There was sufficient evidence for a jury to find the defendant guilty beyond a reasonable doubt. Officer Johnson, who arrested the defendant, testified that he saw the defendant fire two shots into the prone bodies of Gayles and Williams. Williams testified that she was first shot in the neck—the wound that paralyzed her—and that the defendant shot her again as she was lying on the ground. Robert H. Kirschner, a county deputy medical examiner, testified that the second gunshot at Gayles was the fatal one and that the cause of death was a "gunshot wound to the chest and neck with penetration of the brain." Gayles' body did not have any stippling—powder burns—around the wounds, and its absence implies that the shooting was not done at close range and not in self-defense.

The most damaging testimony, however, came from Assistant State's Attorney Lazzaro, who testified that the defendant admitted shooting the victims while they were on the ground to make sure that they were dead. The defendant also signed a written statement to that effect.

Thus, the evidence was sufficient for a jury to find the defendant guilty beyond a reasonable doubt.

## III

■ The defendant also claims that the trial court erred when it denied his request that the complainant Ava Williams be fingerprinted so that a complete criminal history could be obtained. At issue is the

scope of Supreme Court Rule 412(a)(vi) (87 Ill. 2d R. 412(a)(v)), which reads in pertinent part:

"Rule 412. Disclosure to Accused

(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

* * *

(vi) any record of prior criminal convictions, which may be used for impeachment, of persons whom the State intends to call as witnesses at the hearing or trial."

The defendant insists that Williams is a prostitute, which is based on statements made by members of Gayles' family. The record, however, reveals no evidence to sustain the allegation. Defendant claims that he hoped to impeach Williams with evidence of a prior conviction.

Pursuant to defendant's request under Rule 412(a), the State provided the defendant with a "name check" search of the Chicago police department's records, which showed that Williams had no criminal record. Defendant claims that the search was insufficient, but the defendant fails to comprehend the nature of impeachment.

In Illinois, a prior conviction for impeachment purposes may be one that goes to the truth or veracity of a witness. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 516, 268 N.E.2d 695 (adopting Fed. R. Evid. 609).) Our supreme court has held that a conviction for prostitution "would not afford a basis for the impeachment of a witness." (*People v. Sawyer* (1971), 48 Ill. 2d 127, 129, 268 N.E.2d 689.) Thus, there is no showing that the defendant was prejudiced in any way by the State's failure to fingerprint the complainant.

## IV

█ The defendant also argues that the trial court committed reversible error when it failed to *sua sponte* instruct the jury in the law of voluntary manslaughter. The record, however, shows that the defendant never tendered a voluntary manslaughter instruction to the court, nor did he object to the court's failure to *sua sponte* instruct the jury. Under Illinois law, the failure to give an instruction for voluntary manslaughter where none is offered is not reversible error. (*People v. DeSavieu* (1983), 120 Ill. App. 3d 420, 425, 458 N.E.2d 504, *appeal denied* (1984), 99 Ill. 2d 531.) Also, we concur with the reasoning of the *DeSavieu* court, which concluded that "the decision by

counsel as to whether a manslaughter instruction should be submitted is a tactical one involving various strategy considerations which would militate against imposing a duty to instruct the jury *sua sponte*." 120 Ill. App. 3d 420, 425.

In this case, the defendant chose to present a self-defense theory, which was inconsistent with a voluntary manslaughter theory. The defense was a tactical decision, which the defendant now tries to mitigate by attempting to impose a duty on the court to instruct the jury in the absence of a tendered instruction. This we refuse to do, and the point is overruled.

## V

■ The trial court sentenced the defendant to 30 years for the murder of George Gayles and 30 years for the attempted murder of Ava Williams, the sentences to run concurrently. On appeal, the defendant claims that the court abused its discretion in imposing the sentences because he had a high potential for rehabilitation and had no prior criminal record.

Our supreme court has established that sentencing is a matter of discretion and, absent an abuse of discretion, the sentence may not be altered on review. (*People v. Willingham* (1982), 89 Ill. 2d 352, 364, 432 N.E.2d 861.) The sentencing court's determination involves the consideration of the subjective circumstances presented in each individual case, *i.e.*, the defendant's mentality, habits, character, and his inclination or aversion to commit crime. (*People v. Dukett* (1974), 56 Ill. 2d 432, 452, 308 N.E.2d 590, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226.) The court also has the duty to fashion a sentence that protects the interests of society. *People v. Perruquet* (1977), 68 Ill. 2d 149, 159, 368 N.E.2d 882.

Under the Unified Code of Corrections, the defendant could have been sentenced to a term of not less than 20 years and not more than 40 years for murder. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(a).) Where the facts show that the nature of the crime was exceptionally brutal or wanton, however, the defendant could have been sentenced to an extended term of 40 to 80 years. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a)(1).) For attempted murder, the defendant could have been sentenced to a term of 6 to 30 years (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(3)), or to an extended term of 30 to 60 years (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(b)(2)).

To determine the proper sentence, a hearing in aggravation and mitigation was held on April 30, 1983. In aggravation, the State submitted that the defendant and his associates had determined that

there was a prostitution problem; they expected trouble, and they were going to be ready for it. The State also presented the defendant's signed statements made to Assistant State's Attorney Lazzaro, in which the defendant admitted that he wanted to make the victims an example and that he wanted to make sure that they were dead. Finally, the State showed that one victim was dead and the other paralyzed.

The defendant, in mitigation, offered the fact that he is the father of six children, was working three jobs to support his family, and had no prior criminal record. Three witnesses testified to his good character in the community.

In sentencing the defendant, the court concluded that the jury had rejected correctly the self-defense theory presented by the defendant. The judge also seemed to rely on the following reasoning:

> "I have heard the evidence that Mr. Muhammad is not violent or dangerous and [that] nobody feels threatened by him, but a man that would take that gun and shoot this lady is very puzzling to me; and then, of course, there was testimony and evidence that while lying on the ground she was shot again. That is a very tragic and unnecessary thing. People who are helpless and lying on the ground are surely no threat to anyone ***."

Because the jury reached the proper verdict, the court's sentencing was not an abuse of discretion. The fact that the defendant was not sentenced to an extended term for murder shows that perhaps the court did consider some mitigating circumstances. We will not disturb the sentences merely because a reviewing court would have balanced the factors differently. *People v. Pittman* (1982), 93 Ill. 2d 169, 178, 442 N.E.2d 836.

For the reasons set out herein, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P.J., and PERLIN, J., concur.