THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALBERTO KINDELAN, Defendant-Appellant.

First District (1st Division)   No. 84—2480

Opinion filed December 22, 1986.

James J. Doherty, Public Defender, of Chicago (Frances Sowa, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Thomas P. Needham, and Joan E. Disis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant, Alberto Kindelan, was convicted of the offense of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(2)) and sentenced to a term of 40 years in the Illinois Department of Corrections. On appeal, defendant contends that: (1) the trial court erred in refusing to ask prospective jurors whether they could accept the legal theory of self-defense; (2) the trial court gave an improper issues instruction with respect to the offense of murder; (3) the sentence imposed is arbitrarily excessive and fails to reflect adequate consideration of defendant's rehabilitative potential; and (4) the State's discriminatory use of peremptory challenges violated defendant's constitutional rights. For the following reasons, we affirm in part and remand for an evidentiary hearing on the issue of the State's use of peremptory challenges.

The record sets forth the following facts pertinent to this appeal. Defendant, a dark-skinned Cuban, was charged with the fatal stabbing of Valerino Guillen on the evening of July 2, 1983, in front of the Guillen home in Chicago. On the night of the incident, approximately 8:15 p.m., Juan and Juanita Guillen, brother and sister, were sitting on their front porch with two friends when they saw approximately seven teenagers talking and leaning on the next-door neighbor's fence. The neighbor, Norma Quintana, asked the teenagers not to lean on the fence because they were bending it. PoPo Ramos, one of the teenagers, shouted profanities at Norma and refused to leave. At that point, Juanita also asked them to leave. PoPo again shouted profanities and told Juanita to mind her own business. When Juan warned PoPo not to talk to his sister that way, PoPo dared Juan to come outside the fence and fight. Juan accepted the dare, and the two fought for several minutes in the street. No weapons were used, and testimony indicates that Juan was the apparent "winner" of the fight. PoPo then left with a friend, warning Juan that they would be back with guns.

After PoPo left, Juanita told Juan to go into the house and to stay there. A few minutes later, Frankie Ramos, PoPo's brother, and three friends, including defendant, arrived at the Guillens' house. At least one member of the group was carrying a bat. Frankie had been told that a group of kids had beaten up his

brother, and he wanted to see Juan about the incident. Juanita explained that it had been a fair one-on-one fight and managed to appease Frankie and his friend. As Frankie was leaving, a car pulled up, and PoPo's mother, her daughter, and two other women emerged from the car and started to scream that they wanted to see Juan.

At that point, Valerino came out of the Guillen house. He had just taken a shower and asked Juanita about the cause of the commotion. Valerino was wearing baggy pants and gym shoes, but did not have on a shirt. After Juanita explained the situation to him, Valerino, standing with both arms folded over his chest, attempted to calm the women. During the confrontation, defendant joined the group, positioning himself close to Valerino. Suddenly, defendant took a step forward and plunged a knife into Valerino's chest. Valerino staggered backward and with his hand over the wound, attempted to climb onto his porch. He then collapsed on the porch, bleeding profusely. Defendant and the other members of the Ramos group fled. Valerino was taken to the hospital where he died from the stab wound.

At trial, defendant admitted that he had stabbed Valerino, but claimed that he had done so because he had thought Valerino was going to hit one of the Ramos girls. Defendant stated that he could not understand the conversation between Valerino and the Ramos women because it had been in English and he spoke only Spanish, but he had heard that Valerino was a dangerous man. When Valerino unfolded his arms and lifted his hand in a gesture, defendant thought that he was going to strike the girls, and, consequently, stabbed him to protect the girls. Defendant stated that he had not gone to the Guillen home with the intent to kill Valerino. In fact, he had been unarmed until someone handed him a knife while he was standing in front of the Guillen home.

Prior to the *voir dire* of the venire, defendant requested the court to ask the jury whether they believed a person could be justified in killing another in self-defense or in defense of others. The court declined, stating that it did not think it was a proper question at that point because no issue of self-defense had been raised. In response, defendant stated that he had included self-defense as an affirmative defense in the pleadings. Nevertheless, the court declined to ask the question.

Thereafter, jury selection commenced, after which the proceedings were continued to the following day. At the outset of the next day's proceedings, defendant moved for a mistrial alleging that the

State had used all seven of its peremptory challenges to illegally exclude blacks from the jury. The State replied that there were three blacks on the jury and countered that defendant had used nine of its peremptory challenges to dismiss nine white persons, adding, "[T]here's nothing wrong. It's a pre-emptory [*sic*] challenge and I'm sure he has his reasons just as we had our reasons." Finding that there had been no systematic exclusion of blacks by the State, the court denied defendant's motion for a mistrial.

Following the trial, the jury returned with a verdict of guilty of murder, and judgment was entered on the verdict. Thereafter, defendant's post-trial motion was denied, and he was sentenced to a term of 40 years in the Illinois Department of Corrections. Defendant's timely appeal followed.

■ On appeal, defendant first contends that he was denied his right to a fair and impartial jury and the right of peremptory challenge by the court's refusal to question prospective jurors about their opinions concerning the use of justified force in self-defense or the defense of others.

Supreme Court Rules 431 and 234 (87 Ill. 2d R. 431; 94 Ill. 2d R. 234) prohibit inquiry into matters of law during *voir dire*. Rule 234, made applicable to criminal cases by Rule 431, states in part: "Questions shall not directly or indirectly concern matters of law or instructions." The express purpose of Rule 234 was to shorten *voir dire* by eliminating questions which did not advance the purpose of the procedure to ascertain bias or prejudice. *People v. Stack* (1986), 112 Ill. 2d 301, 493 N.E.2d 339.

Recently, in *People v. Muhammad* (1985), 132 Ill. App. 3d 901, 478 N.E.2d 457, *appeal denied* (1985), 108 Ill. 2d 582, this court held that Rule 234 prohibits questions during *voir dire* which concern the theory of self-defense in murder prosecutions. (See also *People v. DeSavieu* (1983), 120 Ill. App. 3d 420, 458 N.E.2d 504, *appeal denied* (1984), 99 Ill. 2d 531; *People v. Bradley* (1981), 97 Ill. App. 3d 1100, 424 N.E.2d 33, *appeal denied* (1981), 85 Ill. 2d 578.) In reaching its decision, the *Muhammad* court stated that a question concerning self-defense was expressly prohibited by Rule 234 because it is "a question of law to which the jury was instructed when all the evidence was presented." *People v. Muhammad* (1985), 132 Ill. App. 3d 901, 905, 478 N.E.2d 457.

Similarly, in the present case, prior to *voir dire*, the court instructed the venire that following presentation of the evidence and the arguments, the jurors would be instructed as to the applicable law, which they had an "absolute duty to accept." In addition, each

venireman was asked individually if he or she could apply the law as instructed and, following trial, was specifically instructed as to the law regarding the justifiable use of force. Accordingly, we conclude that the trial court properly refused defendant's question. In reaching our determination, we find defendant's reliance on *People v. Stack* (1986), 112 Ill. 2d 301, 493 N.E.2d 339, unpersuasive for the reason that *Stack* specifically addresses the defense of legal insanity.

■ Next, defendant contends that the trial court erroneously gave the jury an improper issues instruction on the offense of murder which failed to inform the jury that in order to convict defendant, the State had to prove defendant acted without lawful justification. Defendant argues that, without this information, the jurors could have concluded that defendant was guilty of murder whether or not he had acted in justifiable defense of his friends. In response, the State argues that defendant has waived this issue for review by failing to tender different instructions, by failing to object to the murder instruction at trial, and by failing to include the objection in his post-trial motion. Moreover, the State argues that the omission from the issues instruction does not rise to the level of grave error nor was the case factually close so as to invoke the plain-error rule.

Generally, failure to object at trial to an error in jury instructions or to properly raise the issue in a post-trial motion waives the issue for appeal. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.) In the present case, defendant neither objected to the issues instruction on the offense of murder nor tendered an alternate version. Further, defendant did not raise the issue in his post-trial motion. Therefore, the issue would appear to be waived. The waiver rule, however, is not absolute. In situations where grave error has occurred or the case is close factually, courts may invoke the plain-error exception in the interests of justice. (*People v. Thurman* (1984), 104 Ill. 2d 326, 472 N.E.2d 414.) We do not find, however, that the situation at bar warrants application of the plain-error doctrine and find *People v. Cox* (1984), 121 Ill. App. 3d 118, 459 N.E.2d 269, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 296, 105 S. Ct. 360, dispositive of the issue.

In *Cox* defendant asserted on appeal that the trial court's failure to give an issues instruction which incorporated the affirmative defense of justifiable use of force, even though not tendered by counsel, amounted to plain error. The *Cox* court reviewed the record and held that although the failure to include legal-justification instructions was erroneous, it did not amount to plain error because the instructions which had been given plus the closing arguments were

sufficient to apprise the jury as to the aspect of legal justification.

Similarly, in the present case, the court read to the jury the definition instruction for murder, which contained the "without lawful justification" language; the definition and issues instructions for voluntary manslaughter, which explained justifiable circumstances; and a self-defense instruction, which informed the jury as to when deadly force is justifiable. Further, the jury heard closing arguments that thoroughly discussed defendant's belief that his act was justified. Accordingly, we conclude that the failure to include "without lawful justification" language in the issues instruction for murder does not rise to the level of plain error in this case, and, therefore, we find that the issue is waived for review.

In addition, we find that defendant's reliance on *People v. Thurman* (1984), 104 Ill. 2d 326, 472 N.E.2d 414, in support of his position on this issue is misplaced. Although *Thurman* held that the failure to include "without lawful justification" in the issues instruction for involuntary manslaughter was reversible error, the holding was expressly limited to the offense of involuntary manslaughter where there is evidence of both recklessness and self-defense.

■ Next, defendant argues that the 40-year sentence imposed by the trial court was arbitrarily excessive and failed to reflect adequate consideration of defendant's rehabilitative potential. In support of his position, defendant relies on *People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606. In *Steffens*, defendant had had a verbal altercation with the victim outside of the victim's parents' home regarding the speed at which defendant had driven down the street. After the altercation, defendant drove away and the victim entered his parents' house. Shortly thereafter, defendant drove back to the scene and the victim and his brother exited the house and approached defendant's car. As defendant started to drive away, he struck the victim, catching him underneath the car, and dragged him for more than a block. The victim's brother and sister ran after defendant's car, shouting to defendant that their brother was caught underneath the car. Defendant finally stopped the car, grabbed a few items from inside, and fled the scene on foot. The victim was taken to a nearby hospital where he died from the wounds sustained while being dragged by defendant's car. At trial, defendant claimed that his car had been struck by a brick as he drove by the victim and his brother, and he had sped away not knowing that he was dragging the victim underneath his car. Defendant was convicted of murder and sentenced to 30 years' imprisonment.

On appeal, the *Steffens* court reduced defendant's sentence to 20

years, noting that "[t]he confrontation between defendant and the victim was initiated by the victim, and, even though defendant returned to the scene apparently to cause some sort of trouble, the murder itself was the result of a sudden escalation of the encounter between defendant and the victim's family." In addition, the court considered the fact that defendant was only 16 years old and had had no "significant" criminal record. *People v. Steffens* (1985), 131 Ill. App. 3d 141, 152-53, 475 N.E.2d 606.

We find *Steffens* unpersuasive of defendant's position. The circumstances leading up to the stabbing in the present case differ on pivotal points from the circumstances in *Steffens*. Unlike in *Steffens*, it is undisputed that Valerino had not initiated any confrontation with defendant. In fact, Valerino was standing unarmed in front of a group of screaming women, attempting to calm them down, when he was stabbed by defendant. Valerino had never even spoken to defendant prior to the stabbing. In addition, defendant was 37 years old. The fact that defendant did not have a criminal record was taken into consideration by the court when it declined to impose an extended-term sentence which had been requested by the State. Based upon the circumstances of this case and the fact that the sentence imposed was within the statutory limits (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(a)), we do not find that the sentence imposed by the trial court was excessive.

■ With respect to defendant's contention that the trial court had failed to consider his rehabilitative potential in imposing the sentence, the record indicates that at the sentencing hearing, the trial court stated:

"[H]aving considered the evidence and arguments that I have heard both in aggravation and mitigation, having considered all of the testimony that I heard at the trial of this matter, having considered the information contained in this pre-sentence investigation, *** I will now impose the sentence I feel is appropriate."

From the above statement it is clear that the court not only considered the rehabilitative factor, but also acted on it in arriving at his sentence. (See *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491.) Accordingly, we find that the trial court considered all relevant factors and properly sentenced defendant to a term of 40 years' imprisonment.

■ Finally, defendant contends that the State's discriminatory use of peremptory challenges during *voir dire* deprived him of his constitutional rights of due process and equal protection of the law.

Following the selection of the jury, the court adjourned for the day. The next day, at the outset of the proceedings, defendant moved for a mistrial predicated on the State's use of all seven of its peremptory challenges to exclude blacks. Defendant then named the seven blacks who had been excluded.[1]

The State responded that it was "somewhat surprised" at the assertion "inasmuch as three Blacks are on the Jury." The court then stated:

"[T]he court would note that it also was keeping track of the people, the racial make-up and sex of people who were excluded by each side and the racial and sexual make-up of the jurors that were selected. *** I do not disagree with your as-far [sic] as the State has excluded Blacks and the Defense has excluded whites, but I believe that there are Blacks on the Jury. There are in fact three Blacks on this Jury. The Court did not find the systematic exclusion. So, therefore, I would deny the motion."

We find this court's recent decision, *People v. Johnson* (1986), 148 Ill. App. 3d 163, dispositive of this issue. In *Johnson*, defendant, a black male, was indicted for the armed robbery of a department-store saleswoman. During *voir dire*, the State used the first seven of its peremptory challenges to exclude six blacks from the jury. Defendant then requested a sidebar and objected to the State's discriminatory use of the peremptory challenges. In response, the prosecutor stated that she was black herself, there were already two blacks on the jury, and that her exclusion of blacks had not been motivated by any prejudice or bias. The trial court, noting that there had been no evidence of systematic exclusion of blacks in previous cases, denied defendant's motion for mistrial.

On appeal, this court held that the recent United States Supreme Court decision, *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, was to be applied retroactively to cases pending on direct appeal at the time *Batson* was decided, such as *Johnson* and the present case. In *Batson*, the Supreme Court overruled the requirement of a showing of systematic exclusion of blacks from the venire as set forth in *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, and held that a defend-

---

[1]At trial, Pedro Maravi, the victim's neighbor, described the assailant as "a colored person" and identified defendant as the assailant. Further, in his brief filed before this court, defendant, a Cuban, described himself as "Black." Neither the trial court nor the State has contradicted this racial description.

ant may establish a *prima facie* case of purposeful discrimination solely on evidence of the prosecutor's use of peremptory challenges to exclude members of his racial group at defendant's trial. Once the defendant establishes a *prima facie* case of purposeful discrimination, the burden shifts to the prosecutor to present a neutral explanation for excluding members of defendant's racial group. *Batson v. Kentucky* (1986), 476 U.S. 79, ___, 90 L. Ed. 2d 69, 88, 106 S. Ct. 1712, 1723.

Based on our decision in *People v. Johnson* (1986), 148 Ill. App. 3d 163, we affirm the judgment and sentence of the circuit court in all respects except as to the court's ruling on the issue of the State's discriminatory use of peremptory challenges. Regarding that issue, we remand the case to the circuit court for a hearing on the present record and any additional record on that issue the parties decide to make for the purpose of determining whether the prosecutor purposefully discriminated against blacks in executing his peremptory challenges. In the event the circuit court finds that the prosecutor did not purposefully discriminate, the court is directed to confirm the judgment and sentence. If the court finds that the prosecutor did purposefully discriminate, the court is directed to order a new trial.

Affirmed in part and remanded with instructions.

QUINLAN, P.J., and O'CONNOR, J., concur.