THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT BRANDON, Defendant-Appellant.

First District (1st Division)   No. 86—0085

Opinion filed June 22, 1987.

Steven Clark and Sue Augustus, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Paula M. Carstensen, and Eugene Hollander, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The defendant, Robert Brandon, was charged by information in the circuit court of Cook County with the offenses of attempted residential burglary (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4, 19—3) and possession of burglary tools (Ill. Rev. Stat. 1983, ch. 38, par. 19—2). A jury found him guilty of attempted residential burglary and not guilty of possession of burglary tools. Judgment was entered on the verdict and Brandon was sentenced to a term of nine years' imprisonment. Defendant appeals. We affirm.

In his appeal, the defendant makes the following contentions: first, that the trial court abused its discretion by refusing to ask prospective jurors during voir dire if they would be prejudiced against the defendant if they learned he had prior felony convictions; and second, that the trial court erred by failing to appoint independent counsel to represent defendant at a hearing on defendant's pro se motion for a new trial in which he alleged inadequacy of trial counsel. The defendant's pro se motion was filed eight days after the trial court had denied a motion for a new trial filed by his appointed trial counsel which did not include a claim of inadequacy of counsel.

Defendant Brandon pleaded not guilty to the information which charged him with attempted residential burglary and possession of burglary tools and requested a jury trial. A public defender was appointed to represent Brandon. Prior to trial, his defense counsel, an assistant public defender, moved in limine to bar the State's use of

Brandon's two prior burglary convictions in any attempt to impeach him. The trial judge denied the request but ordered the State to use the term "felony conviction" rather than "burglary conviction" when making reference to these prior convictions during any impeachment of defendant. After denial of the motion *in limine*, defense counsel then requested that the court ask the prospective jurors during its *voir dire* examination whether they would be biased or prejudiced against the defendant because of his prior felony convictions. The trial judge declined to do so, stating that the manner in which any such question would be asked could possibly prejudice either party and, in any event, the jury instructions would cover this matter.

At trial the State presented an occurrence witness, the victim, the victim's mother, the two arresting officers, and an evidence technician for the Chicago police department. The occurrence witness, Mattie Smith, testified that she was near 1854 South Ridgeway on May 16, 1985, when she noticed a man on the second floor porch prying open a window. She stated that she also saw a man in the alley who appeared to be acting as a lookout. On cross-examination Smith testified that although she had called the police to report the incident, she was never asked to identify the man she saw on the porch.

Chicago police officer Christin Kato testified that he and his partner were dispatched to the Ridgeway address in response to a call of a burglary in progress. Officer Kato stated that, upon arriving at the scene, he heard a banging noise coming from the second floor porch and observed a man straddled on a second floor windowsill. The man had his left leg on the porch and his right leg and the whole right side of his body inside the window. Kato identified the defendant as that man. According to Officer Kato, the defendant told him that he was "looking for someone."

Officer Kato testified that he placed the defendant under arrest, and at the time of his arrest Brandon had a pry bar and a broken padlock in his possession. Officer Kato further stated that when he examined the second floor window the burglar bars were unlocked at the bottom and were partially pushed inside the half opened window. A second witness, Daisey Brinson, the victim's mother, lived on the same block as her daughter and had heard from a neighbor that the police were at her daughter's address investigating a burglary attempt. Mrs. Brinson testified that she then walked over to the scene of the investigation and observed the opened window and the pushed-in burglar bars. Mrs. Brinson stated that she told the arresting officers that her daughter always kept that window closed and that the bars covering the window were always padlocked.

Thereafter, the padlock that had been recovered at the scene was identified by Officer Kato and introduced in the court proceedings. Rose Ashley, the tenant of the second floor apartment, also identified the padlock as one of the locks she used on a set of burglar bars which were on the rear windows of her apartment. Police officer Frank Luera testified that he was also present during the arrest and he corroborated Kato's testimony concerning the events that occurred at 1854 South Ridgeway on May 16, 1985.

The defendant, Robert Brandon, testified in his own behalf. According to the defendant, he went to the 1854 Ridgeway building in order to purchase marijuana from residents of the first floor apartment. The defendant said that he knocked on the door of the first floor apartment where he had purchased marijuana several times before and that when no one answered the door he began to leave. It was at this time that Officer Kato and his partner, Officer Luera, arrived and arrested him. Defendant said that Officer Kato then went to the second floor and returned with a crowbar and tried to hand it to the defendant. Officer Kato accused the defendant of trying to break into the second floor apartment but Brandon denied the allegation. At trial, the defendant also denied that he was trying to break into the second floor apartment. According to Brandon, Officers Kato and Luera both told him that they wanted information from him about people who were selling drugs from the first floor apartment and that they would make a deal with him in exchange for the information. Defendant claimed that the first time he saw the padlock that was allegedly in his possession at the time of his arrest was at the police station.

The defendant's sister, Olivia Minniefield, testified that Brandon had left her house at about 11:30 that morning to purchase some marijuana for them to smoke together before he went to work at noon. In rebuttal, however, the People presented the sister of the victim, Betty Johnson, who lived in the first floor apartment, which was alleged to be the place where defendant regularly purchased drugs. Johnson testified that she lived there with her two school-age sons and that no one was ever home before 2:30 p.m. on weekdays. She further stated that she did not know Brandon and had never sold him drugs.

At trial, the defendant stipulated to his prior convictions. According to the stipulation, which was read to the jury after both sides rested, Brandon was convicted in June 1980 of a felony and sentenced to four years' probation. On February 2, 1982, the defendant was also convicted of a felony and sentenced to three years in the Illinois Department of Corrections. Following closing arguments, the court's in-

structions were read to the jury and included Illinois Pattern Jury Instruction, Criminal, No. 3.13 (2d ed. 1981) (IPI Criminal 2d No. 3.13):

> "Evidence of a defendant's previous conviction may be considered by you only [insofar] as it may affect his believability as a witness, and must not be considered by you as evidence of his guilt of the offenses with which he is charged."

Thereafter, the jury found the defendant guilty of attempted residential burglary and not guilty of possession of burglary tools.

On October 3, 1985, after the trial judge entered judgment on the conviction and the defendant's attorney filed and argued a motion for a new trial which the court denied, the judge continued the proceeding for a sentence hearing. On October 11, 1985, the date set for sentencing, the defendant presented an unsworn *pro se* motion for a new trial in which he alleged, *inter alia*, that he was denied effective assistance of counsel. However, after hearing Brandon's allegations of ineffective assistance of counsel and permitting his trial counsel to respond, the trial judge informed the defendant that he would not reopen the post-trial hearing during the aggravation phase of sentencing, but would stand on his prior ruling in which he had denied a post-trial motion of the defendant previously presented by his counsel. The defendant then agreed to have his trial counsel continue to represent him during the sentence hearing, and following the hearing, the judge sentenced the defendant to nine years' imprisonment under the Class X habitual offender statute. Ill. Rev. Stat. 1985, ch. 38, par. 33B—1.

The defendant initially contends in this appeal, as stated previously, that the trial court abused its discretion when it refused to ask the prospective jurors during its *voir dire* examination if they would be prejudiced against the defendant because of his prior felony convictions. He claims the State's case here is a credibility contest between the arresting officers and the defendant, and, if the jurors prejudged the defendant on the basis of his prior felony convictions, he was denied his right to a fair and impartial jury. The State, on the other hand, claims that the defendant failed to raise this issue in his motion for a new trial and, therefore, the issue is waived for purposes of this appeal. Defendant responds that even though he failed to raise this issue in his post-trial motion, review is warranted under the plain error doctrine because his seventh amendment right to a fair and impartial jury was affected by the denial of his tendered *voir dire* questions.

■■ ■ Under Supreme Court Rule 234 (87 Ill. 2d R. 234), the trial court is to conduct *voir dire* examination by asking questions the court believes appropriate and relevant to the prospective jurors' qualifications to serve. "Questions shall not directly or indirectly con-

cern matters of law or instructions." (87 Ill. 2d R.234.) In conducting the *voir dire*, the trial court is given broad discretion in determining what questions to ask, and this court will not find that the trial court abused its discretion where the procedure followed by the court created reasonable assurance that any prejudice or bias would be discovered. (*People v. Sanders* (1986), 143 Ill. App. 3d 402, 493 N.E.2d 1.) In *People v. Morgan* (1987), 152 Ill. App. 3d 97, 504 N.E.2d 172, this court specifically held that the proper standard for review under circumstances such as here is "whether the questions and procedures created reasonable assurance that any prejudice or bias would be discovered." 152 Ill. App. 3d 97, 101, 504 N.E.2d 172, 175-76.

Defendant Brandon, however, claims that his tendered question concerning whether the jurors would be prejudiced by the defendant's felony background does not concern matters of law but merely is a proper question probing for bias. However, the authority which defendant cites in support of his contention that the requested *voir dire* question was proper is inapposite, as will be discussed later in this opinion.

In *People v. Lobb* (1959), 17 Ill. 2d 287, 161 N.E.2d 325, although predating current Supreme Court Rule 234, our supreme court set forth the underlying basis for restricting the scope of *voir dire*:

> "The only positive restriction in Rule 24—1 [predecessor of Rule 234] is that the jurors shall not be examined concerning matters of law or instructions. This is in harmony with the recognition of the proper separate functions of the court and jury and with the decision of this court in *People v. Bruner*, 343 Ill. 146, holding that jurors in criminal as well as in civil cases are judges of the facts only and not of the law, and that a statute containing provisions to the contrary is unconstitutional. [Citations.] If, as held in *Bruner*, jurors are to be governed in matters of law only by the instructions given by the court, no reason is perceived for questioning them as to legal principles or concepts beyond ascertaining whether or not they are willing to accept and follow the instructions concerning the law of the case." 17 Ill. 2d 287, 302, 161 N.E.2d 325, 333.

The tendered *voir dire* question here is clearly covered in IPI Criminal 2d No. 3.13, which was given to the jury. Thus, the question proffered by the defendant was, in our judgment, an improper question under the circumstances, particularly because it would have tended to unfairly tip the balance in favor of the defendant's case.

■ We believe that *People v. Lexow* (1962), 23 Ill. 2d 541, 179 N.E.2d 683, although again a case prior to Rule 234, is directly on

point and instructive here. The defense counsel in *Lexow*, similarly to defense counsel here, asked a prospective juror whether he would have a feeling of prejudice towards the defendant if the juror was to learn during trial that the defendant had been previously convicted of a felony. The trial judge ruled the question improper on the basis that the prospective juror could not know the answer to that question before being instructed on the limited effect of proof of a prior conviction. At the close of all the evidence, the trial court instructed the jury that the defendant's prior felony conviction could only be used to affect the defendant's credibility as a witness, and not as evidence of his guilt of the offense charged. In its affirmance, our supreme court found that the trial court did not abuse its discretion by refusing inquiry into this area. Likewise, we do not find that the trial court here abused its discretion since the jury in this case was properly instructed on the limitations of felony convictions through the jury instructions at the end of the case.

The defendant asserts that *Lexow* no longer has precedential value in view of the supreme court's pronouncements in *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062, and *People v. Stack* (1986), 112 Ill. 2d 284, 493 N.E.2d 727. The State contends, and we believe properly, that the record demonstrates that the trial court did comply with the intendment of *Zehr* and *Stack* and, thus, with Rule 234. However, we find that neither *Zehr* nor *Stack* directly controls the disposition of this case, since the questions refused in *Zehr* and *Stack* concerned issues radically different from those involved here. Furthermore, this court has construed both *Zehr* and *Stack* to be applicable only under circumstances similar to those presented in these cases. See *People v. Kindelan* (1986), 150 Ill. App. 3d 818, 502 N.E.2d 422; *People v. Chamness* (1984), 129 Ill. App. 3d 871, 473 N.E.2d 476.

In *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 683, the supreme court found that the trial court abused its discretion by failing to ask questions tendered by the defense concerning the jurors' understanding of the State's burden of proof, the defendant's presumption of innocence, and the defendant's right to neither testify nor present any evidence. In response to the State's argument that the tendered questions dealt with matters of law or instructions and were, therefore, properly refused under Rule 234, our supreme court stated:

> "We are of the opinion that essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond

a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him. If a juror has a prejudice against any of these basic guarantees, an instruction given at the end of the trial will have little curative effect. *** 'Each of these questions goes to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury' [citation]." 103 Ill. 2d 472, 477, 469 N.E.2d 1062, 1064.

In *People v. Stack* (1986), 112 Ill. 2d 301, 493 N.E.2d 339, the supreme court found that the trial court erred in failing to ask the prospective jurors on *voir dire* about their opinion, if any, of the defense of legal insanity. In finding that the tendered question did not violate Rule 234, the supreme court noted that the question, like those in death penalty and dramshop cases, involved an extremely controversial legal issue which many members of the community may be prejudiced against and, under such circumstances, inquiry was proper in order that the parties could exercise their prerogatives of challenge:

"Although the insanity defense upon which the defendant relied is a well-recognized legal defense, it remains a subject of intense controversy. In *People v. Bowel* (1986), 111 Ill. 2d 58, 65, we described insanity as 'a defense which is known to be subject to bias or prejudice.' A defendant's right to an impartial jury is not, therefore, protected where the sole inquiry into whether jurors will abide by the law allowing that controversial defense is the far broader and all-embracing question which the State contends was propounded in this case, namely, whether the jurors would follow the court's instructions on the law." *People v. Stack* (1986), 112 Ill. 2d 301, 313, 493 N.E.2d 339, 344.

Thus, contrary to the defendant's assertions that *Zehr* and *Stack* have changed the law governing *voir dire*, we believe both decisions are properly applied only to the unique factual and legal situations presented in those cases. For example, in *People v. Kindelan* (1986), 150 Ill. App. 3d 818, 502 N.E.2d 422, this court affirmed the trial court's refusal to ask prospective jurors their opinion concerning whether one can be justified in the use of force in the defense of others. The defendant there also relied on *Stack* but this court found that reliance "unpersuasive for the reason that *Stack* specifically address[ed] the defense of legal insanity" and did not intend to include all matters of defense. (150 Ill. App. 3d 818, 823, 502 N.E.2d 422, 425.) Again, in *People v. Chamness* (1984), 129 Ill. App. 3d 871, 473 N.E.2d 476, this court affirmed the trial court's refusal to question

prospective jurors concerning whether evidence of serious physical injuries would hamper their consideration of all other evidence. The defendant there was concerned with whether the prospective jurors would attach more weight to the victim's injuries than to the defendant's claim of self-defense. This court found *Zehr* inapplicable since the question regarding the seriousness of the victim's injuries did not fall into the category of questions involved in *Zehr*, *i.e.*, questions concerning the basic constitutional guarantees of a criminal defendant.

■ Accordingly, *Zehr* and *Stack* are inapplicable in this case because the question posed here does not go to a basic or fundamental matter directly involving the defendant's responsibility or guilt, as in *Stack*, or to one of the basic rights guaranteed to a criminal defendant, as enumerated in *Zehr*. Thus, the trial court did not err in refusing to inquire of the jury concerning the defendant's felony background. In fact, the State suggests that had the court asked the question in *voir dire* it might have improperly preconditioned the jurors in favor of the defendant. This is so because if, as defendant claims, this case was a battle of credibility between the arresting officers and the defendant, then the tendered question would, as observed by the trial judge, have improperly highlighted an aspect of the defense case rather than legitimately attempt to expose bias or prejudice as claimed. Moreover, the trial court could not have anticipated at the *voir dire* stage whether the defendant would testify and, if so, whether the State would impeach him with prior convictions. Such procedural matters do not go to the underlying issue that *Zehr* addressed and, therefore, the trial judge properly refused to tender the question concerning the defendant's felony background to the potential jurors.

■ The defendant's second contention is that the trial court erred by not appointing independent counsel with respect to his *pro se* motion for a new trial, wherein he had alleged ineffective assistance of counsel. The defendant's motion alleging ineffective assistance of counsel was not presented to the court until after the trial court had denied defendant's motion for a new trial which was prepared, filed, and argued by the defendant's appointed trial counsel. Also, the defendant did not make a claim or request that a claim be made of ineffective assistance of counsel in the first post-trial motion, nor was such a claim argued at that hearing. Therefore, pursuant to section 116—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 116—1), that issue could properly be treated as waived here.

However, even if the claim is found to be preserved for appeal by

defendant's second post-trial motion, the allegations of inadequate representation were unsworn. It is generally true that where a defendant seeks a new trial on the basis of factual allegations not in the record, the motion must be accompanied by a sworn affidavit (see *People v. Boyce* (1977), 51 Ill. App. 3d 549, 562, 366 N.E.2d 914, 924) which, of course, was not done here, and this would also be an additional basis to deny plaintiff's claim.

In any event, such a motion to succeed must establish substantial prejudice as a result of the alleged deficiencies in trial counsel's performance of trial duties (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052) and not merely be a second-guessing of counsel's trial tactics (*People v. Nelson* (1982), 106 Ill. App. 3d 838, 842, 436 N.E.2d 655, 660). Here, the defendant's motion alleged a misunderstanding between himself and his counsel over the availability of a mistrial in the post-trial motion presented by his counsel, it criticized the effectiveness of counsel's cross-examination and her failure, in defendant's opinion, to adequately prepare for and defend against the prosecutor's closing argument. However, defendant's unsworn allegations, even if true, do not establish substantial prejudice or show how the result would have differed, and hence, on this further basis, the claim was properly dismissed. *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

■ The cases that defendant cites in support of his claim are clearly distinguishable from that before this court. (See *People v. Jameson* (1987), 155 Ill. App. 3d 650; *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045.) In these cases the trial court had not yet ruled on the post-trial motions filed by defense counsel when the defendant alleged ineffective assistance of counsel; also, the claimed error went to an issue which could have changed the result in the defendant's favor; and more importantly, a clear conflict of interest existed which the trial court should have resolved by appointing new counsel to represent defendant at the post-trial hearing. Here, in contrast, the defendant was granted a continuance to obtain private counsel at the start of trial, but thereafter affirmatively chose the appointed public defender to represent him. Initially, the trial court in this case granted the defendant leave to file his *pro se* motion for a new trial, and it was only after the judge inquired into the alleged ineffective assistance of counsel that he refused to reopen the post-trial hearing and denied the defendant's motion. The court then stated that it would abide by its prior ruling, and then again asked the defendant whether he wanted this public defender to continue to represent him at the sentencing hearing, and the defendant said that he

did. These circumstances are considerably different from those presented in the cases cited by the defendant.

In *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045, defense counsel himself recognized that a potential conflict of interest was presented by the *pro se* motion for a new trial since the basis for the ineffective assistance of counsel allegation was counsel's failure to contact an alibi witness. Under those circumstances, a different trial result was likely if the witness had been called to testify on the defendant's behalf to establish his innocence. The defense counsel there then appropriately requested a continuance of the post-trial hearing for the purpose of appointing new counsel to represent the defendant at the hearing. However, the trial court denied the motion for a continuance as well as the motions for a new trial. On appeal the trial court was reversed. In *People v. Jameson* (1987), 155 Ill. App. 3d 650, the defendant's motion alleging inadequacy of counsel was similarly grounded on the fact that the appointed counsel had failed to take any steps to contact a key defense witness. Again, the defense counsel himself moved to withdraw from the case prior to trial and sought a continuance to allow defendant to obtain new counsel. The trial court denied both motions. On appeal, the appellate court found that the failure of defendant to allege ineffective assistance of counsel in his post-trial motion did not constitute waiver under those circumstances and reversed the trial court.

■ The holdings in both *Krankel* and *Jameson* hinge on the conflict of interest that was presented by the possibility there that defense counsel would be required to argue his own effectiveness in the post-trial motion. Thus, in both cases the issue of ineffective assistance arose and was presented to the trial court prior to the post-trial motion. There is no *per se* rule requiring appointment of new counsel every time a post-trial motion includes allegations of ineffective assistance of counsel. (*People v. Mallette* (1985), 131 Ill. App. 3d 67, 75, 475 N.E.2d 237, 243.) Furthermore, whether an actual conflict of interest exists in a particular case is tested by the underlying allegations of incompetence. (*People v. Johnson* (1981), 98 Ill. App. 3d 228, 232, 424 N.E.2d 610, 614.) In both *Krankel* and *Jameson* the asserted conflict of interest involved ineffective assistance claims that alleged substantial prejudice. The alleged incompetence consisted solely of disagreement over trial tactics, and therefore the underlying claim was, in fact, not a cognizable claim of ineffective assistance of counsel (see *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052) and did not result in substantial prejudice to the defendant. *People v. Johnson* (1981), 98 Ill. App. 3d 228, 232, 424 N.E.2d

610, 614; *People v. Bennett* (1980), 90 Ill. App. 3d 64, 74-75, 412 N.E.2d 1001, 1009.

Here there was no allegation of any conflict between the defendant and his appointed counsel until after the post-trial motion was heard and denied; consequently, defense counsel was not required to argue her own incompetence here. As this court stated in *People v. Jackson* (1985), 131 Ill. App. 3d 128, 139, 474 N.E.2d 466, 474, it is not necessary to appoint new counsel every time a claim of ineffective assistance of counsel is alleged; rather, the trial court only needs to determine whether the facts underlying the claim of incompetency "have potential merit and to refuse to appoint new counsel if defendant's claim is spurious or revolves simply around a matter of trial strategy or tactics." A trial court's determination that such a claim is spurious will not, as this court further stated in *Jackson*, be overturned on appeal unless it is manifestly erroneous. (131 Ill. App. 3d 128, 140, 474 N.E.2d 466, 475.) In the present case, it clearly was not manifestly erroneous.

For the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL and BUCKLEY, JJ., concur.