THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT E. MORGAN, Defendant-Appellant.

First District (1st Division)   No. 85—0769

Opinion filed January 26, 1987.

James J. Doherty, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, James E. Fitzgerald, and Michael K. Smith, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant, Robert Morgan, was found guilty of the offenses of rape, deviate sexual assault, and two counts of aggravated incest (Ill. Rev. Stat. 1983, ch. 38, pars. 11—1, 11—3, 11—10, respectively) committed against his minor stepdaughter on the evening of April 14, 1983. The trial court entered judgment on the verdict, merged the convictions for aggravated incest into the convictions for rape and deviate sexual assault, and sentenced defendant to concurrent terms of 20 years' imprisonment. On appeal, defendant contends that: (1) the *voir dire* was inadequate to disclose the potential bias and prejudices of the jurors; (2) exclusion of the public during two days of trial violated defendant's right to a public trial; and (3) the admission of evidence of other crimes and the court's failure to limit that evidence and to properly instruct the jury as to the use of that evidence denied him a fair trial. For the reasons that follow, we affirm the judgment of the trial court.

The record sets forth the following facts pertinent to this appeal. At trial, the victim testified that on the evening of April 14, 1983,

while her mother was at work, her stepfather awoke her in her up-stairs bedroom and asked her to come downstairs where he forcibly raped her and performed deviate sexual acts. Following the incident, the victim went back upstairs and told her stepsister and brother that defendant had "hurt" her again. The victim was referring to the fact that defendant had committed the same offenses to her in September 1980, for which he had been arrested and convicted.

Following the victim's testimony, Mary O'Keefe, the registered nurse who was present during the hospital examination of the victim on the morning following the incident, testified as to her observations during the examination. The victim's 15-year old brother then testi-fied as to his conversation with the victim on the night of the 1983 incident. When questioned about the prior 1980 sexual offense, the victim's brother could not remember what, if anything, had occurred between his sister and stepfather. Following the brother's testimony, court adjourned for the day.

The next day, prior to the testimony of the victim's 11-year old stepsister, the court ordered all those not directly interested in the case to wait outside the courtroom. The witness then testified as to certain of the events which had occurred on the evening of April 14, 1983. Next, the victim's mother testified as to the events surrounding the 1983 incident as well as the 1980 incident. Regarding the 1980 of-fense, the mother stated that the victim, age 12 at the time, had told her that defendant had had sex with her, and that, following his ar-rest, defendant admitted to the mother that he had sexually molested the victim. Defendant objected to testimony regarding his admission to the prior offense on the ground that it violated the marital privi-lege and that the testimony exceeded the bounds for proof of other crimes. The trial court overruled defendant, but agreed to admonish the jury that the evidence regarding the 1980 offense was being pre-sented for a limited purpose.

Over defendant's objection, Captain Roger Corray, chief investiga-tor for the Champaign County sheriff's department, testified regard-ing the 1980 incident. The extent of Captain Corray's testimony was that he had received a telephone call asking for his assistance in the investigation of a rape and deviate sexual assault allegedly committed by defendant to his 12-year-old stepdaughter. Based upon Corray's in-terview with the victim, her stepsister, and her mother, defendant was charged with the offense of rape. Following Captain Corray's tes-timony, Officer Patrick Fitzgerald of the Park Forest police depart-ment testified as to the investigation of the April 1983 incident. Trial was then recessed for the day.

The next day, Investigator Thomas Fikjeys of the Cook County sheriff's police department and David Metzger, forensic serologist, testified on behalf of the State. Following their testimony, the court denied defendant's motion for a directed verdict, both the State and defendant rested, and closing arguments ensued. Thereafter, judgment was entered on the jury's verdict of guilty on all counts. Defendant's motion for a new trial and arrest of judgment was denied, and the court sentenced defendant to concurrent terms of 20 years for deviate sexual assault and rape, finding that the convictions for aggravated incest merged. Defendant's timely appeal followed.

Defendant first contends that the trial court's refusal to ask the venire during *voir dire* specific questions that he had submitted deprived him of his constitutional rights to due process and a fair trial. Defendant submitted questions which he claims were designed to address four areas of potential prejudice: (1) the nature of the charges; (2) the young ages of the State's occurrence witnesses; (3) the fact that several witnesses were police officers; and (4) defendant's decision not to produce any evidence. Defendant further requested that the court ask the questions to each prospective juror individually rather than to the venire as a whole and, as a final question, that the court ask, "Is there any reason why you would not want to sit on this jury?"

This trial court denied defendant's request, adding that, if the individual questionnaires completed by the prospective jurors suggested the need to make additional inquiries of certain individuals, it would do so. Thereafter, the trial court asked the following general questions of the venire:

"Is there anybody here that has made up his or her mind about any issues in this case or any part in this case?

* * *

Does anyone here know of any reason why he or she can't give both sides a fair and impartial trial and to keep an opened mind throughout?

* * *

Is there anything about the nature of this case that would bother you so that you could not be fair and impartial?

* * *

If the defendant Morgan decides not to testify and does not take the stand is there anyone here who would hold it against him because he didn't take the stand?

* * *

Is there anyone here who has any problem with [the] proposi-

tion [that defendant is presumed to be innocent of the charge and must be proved guilty beyond a reasonable doubt] or object to that proposition?"

Following the questions posed to the venire as a whole, the court then queried the prospective jurors, individually, with respect to their questionnaires. In particular, if the prospective juror had indicated on his questionnaire that he knew or was related to a police officer, the court asked if that relationship would affect the prospective juror's decision. In each instance, the prospective juror replied in the negative.

■ The fundamental purpose of the *voir dire* examination is to safeguard a defendant's constitutional right to be tried before a fair and impartial jury (*Irvin v. Dowd* (1961), 366 U.S. 717, 721, 6 L. Ed. 2d 751, 755, 81 S. Ct. 1639, 1642) by allowing counsel to ascertain whether prospective jurors are able and willing to be impartial (*People v. Stack* (1984), 128 Ill. App. 3d 611, 470 N.E.2d 1252). In conducting the *voir dire*, the trial court is accorded broad discretion in determining which questions will be asked and which procedures will be followed. (87 Ill. 2d R. 234.) Upon review, the standard for evaluating a court's exercise of discretion during the *voir dire* is whether the questions and procedures created reasonable assurance that any prejudice or bias would be discovered. *People v. Sanders* (1986) 143 Ill. App. 3d 402, 493 N.E.2d 1.

■ In the case at bar, we find that the general questions posed by the court to the venire as a whole and the specific questions posed to the individual prospective jurors were sufficient to have disclosed any prejudice or bias. Further, the record contradicts defendant's contention that general questions to the venire as a whole "cannot be relied upon to produce a disclosure of a disqualifying state of mind." The record indicates that individual prospective jurors responded to the court's group questions and that their responses were given careful consideration by the court. Therefore, based on all of the trial court's questions during *voir dire* and its admonitions to the jury, we conclude that defendant was not denied his right to a fair and impartial jury.

■ Next, defendant argues that the trial court's "sweeping" exclusion of the public from the courtroom during trial violated his constitutional rights to a fair trial. Prior to opening statements, the State moved to exclude all present in the courtroom during the testimony of juvenile witnesses unless those persons had a direct interest in the proceeding. In support of its motion, the State argued that the exclusion would be in the best interests of the juvenile victim because of

the nature of the crimes alleged, her family relationship with defendant, and testimony as to similar sexual offenses committed by her stepfather to her several years earlier. Over defendant's objection, the court granted the State's motion, limiting the exclusion order to the three juvenile witnesses.

On the first day of trial, following opening statements, the spectators were excluded for the testimony of the victim, the State's first witness. After the victim testified, Mary O'Keefe, registered nurse, took the stand, followed by the victim's 15-year old brother. There is no evidence in the record that the spectators were precluded from entering the courtroom during Ms. O'Keefe's testimony and no indication that defendant objected to their exclusion if, in fact, they had been excluded. On the second day of trial, the first witness was the victim's 11-year old stepsister, followed by three adult witnesses. Again, there is no evidence in the record that the spectators were not allowed entry into the courtroom after the juvenile witness had testified or that defendant had objected to their alleged exclusion.

In *Press-Enterprise Co. v. California* (1984), 464 U.S. 501, 78 L. Ed. 2d 629, 104 S. Ct. 819, the United States Supreme Court stated that there is a presumption of openness in a criminal trial which can only be overcome by an overriding interest that is specifically articulated. In *Waller v. Georgia* (1984), 467 U.S. 39, 81 L. Ed. 2d 31, 104 S. Ct. 2210, the Supreme Court adopted the *Press-Enterprise* holding and applied it as a four-prong test for determining the propriety of closing a trial to spectators:

> "[T]he party seeking to close the hearing must [1] advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure." 467 U.S. 39, 48, 81 L. Ed. 2d 31, 39, 104 S. Ct. 2210, 2216.

In the present case, the State requested the partially closed trial so as to protect the best interests of the minor victim and her brother and stepsister during the testimony against defendant. The United States Supreme Court has found that safeguarding the physical and psychological well-being of a minor testifying in a rape case is a compelling interest. (*Richmond Newspapers, Inc. v. Virginia* (1980), 448 U.S. 555, 65 L. Ed. 2d 973, 100 S. Ct. 2814.) Further, the trial court restricted the closure motion to testimony by the juvenile witnesses. The court considered whether the closure should be limited or all-inclusive, and whether family members should be present, and decided

on limited closure with family members and the media present. Finally, the court found that the intimate and embarrassing nature of the testimony warranted the limited closure and did not hamper the public nature of the trial.

■ Based upon the aforementioned application of the *Press-Enterprise* test to the facts at bar, we conclude that the trial court properly closed the courtroom to spectators during the testimony of the juvenile witnesses and defendant was not denied his constitutional right to a public trial. Without evidence in the record that the trial court prevented spectators from entering during adult testimony, whether the spectators did or did not reenter the courtroom during the testimony of the adult witnesses is irrelevant to the validity of the court's ruling.

■ Next, defendant contends that he was denied a fair trial by the admission into evidence of testimony regarding his 1980 conviction for committing the same sexual offenses against the victim. In defendant's opinion, the evidence was irrelevant, unnecessary, and overly prejudicial.

As a general rule, evidence of other crimes or wrongful conduct is inadmissible to show the defendant's character or his propensity to commit a crime. Correlatively, where the evidence has no purpose other than to show defendant's propensity for committing the crime charged, it is excluded. However, evidence of other crimes is admissible if it is relevant for any other legitimate purpose. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485 N.E.2d 1292.) For example, in the prosecution of a sex-related offense, evidence of prior acts between the defendant and the complaining witness is admissible to show the familiar relation of the parties and to corroborate the complaining witness' testimony as to the act relied upon for conviction. (*People v. Bradley* (1984), 128 Ill. App. 3d 372, 470 N.E.2d 1121; *People v. Long* (1977), 55 Ill. App. 3d 764, 370 N.E.2d 1315.) Defendant's contention that the aforementioned exception has been discredited by the "more recent" cases, *People v. Barbour* (1982), 106 Ill. App. 3d 993, 436 N.E.2d 667, and *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238, is without merit. The cases relied upon by defendant not only precede *Bradley* and, thus, are not "more recent," but they are also factually inapposite to the case at bar. *People v. Barbour* (1982), 106 Ill. App. 3d 993, 436 N.E.2d 667 (evidence of other prior uncharged rapes was not admissible to show defendant's identity or victim's lack of consent in rape prosecution); *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238 (defendant convicted of robbery and murder).

■ In the present case, defendant's 1980 conviction was for sexual offenses committed against the same stepdaughter who is the victim in this case. Thus, in our view, evidence as to the 1980 offense was properly admissible to show the familiar relation of the parties as well as to corroborate the victim's testimony.

■ Finally, defendant argues that the excessive emphasis on the 1980 conviction and the improper jury instructions regarding evidence of prior crimes deprived him of a fair trial.

With respect to his claim that testimony regarding the 1980 conviction was excessive, defendant contends that the "repeated references *** obscured any valid purpose of the evidence." In our view, the record belies defendant's contention. The record indicates that on the first day of trial the victim testified as to the 1980 sexual act in very limited detail. She merely stated that in September 1980, defendant had raped her and that the police had been notified. Thereafter, the victim's testimony was corroborated in equally limited detail by her mother and the police officer who investigated the 1980 offense. None of these witnesses provided specific details.

It is well-recognized that evidence of other crimes, otherwise admissible, should be limited to evidence that is relevant to the issue for which the other crime is admitted. (*People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59.) In the present case, we find that the testimony was properly limited and, thus, properly admissible.

■ With respect to the "other crimes" jury instruction, the jury was given the following instruction over defendant's objection:

"Evidence has been received that the defendant has been involved in an offense other than that charged in the indictment. This evidence has been received solely on the issue of absence of mistake of the identification of the defendant and defendant's design. This evidence may be considered by you only for the limited purpose for which it was received."

The function of jury instructions is to convey to the jury the correct principles of law applicable to the evidence submitted, so that the jury may, by the application of proper legal principles, arrive at a correct conclusion according to the law and the evidence. (*People v. Richards* (1978), 64 Ill App. 3d 472, 381 N.E.2d 307.) In the present case, contrary to the jury instruction, the evidence regarding the 1980 offense was not received to show absence of mistake, identification of the defendant, or defendant's design. Instead, as argued by the State with respect to the previous issue, the evidence was introduced to show the familiar relationship between defendant and the victim as well as to corroborate the victim's testimony. Although the jury in-

structions did not convey this ground for admission of the other-crimes evidence, in light of the overwhelming evidence which established defendant's guilt beyond a reasonable doubt, we do not find that the jury instructions as given constituted reversible error. See *People v. Weathers* (1974), 23 Ill. App. 3d 907, 320 N.E.2d 442.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

QUINLAN, P.J., and BUCKLEY, J., concur.