UNITED STATES of America ex rel.
Robert MORGAN, Petitioner,

v.

Michael LANE, et al., Respondents.

No. 88 C 0007.

United States District Court,
N.D. Illinois, E.D.

Jan. 24, 1989.

Robert E. Morgan, Dixon, Ill., pro se.

David E. Bindi, Asst. Atty. Gen., Crim. Appeals Div., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Petitioner, Robert Morgan, ("Morgan") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is Michael Lane, the Director of the Illinois Department of Corrections. This action arises out of Morgan's conviction in state court for rape, deviate sexual assault and two counts of aggravated incest. Morgan has exhausted his state court remedies.[1] For the reasons stated below, the petition is denied.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Following a three-day jury trial, Morgan was found guilty of rape, deviate sexual assault and two counts of aggravated incest committed against his minor stepdaughter. The trial court entered judgment on the verdict, merged the convictions for aggravated incest into the convictions for rape and deviate sexual assault, and sentenced Morgan to concurrent terms of twenty years imprisonment.

Immediately prior to trial, the trial court granted the state's motion to exclude all disinterested persons from the courtroom during the testimony of the three juvenile witnesses. Both the media and the family members of the victim and Morgan would be allowed to remain. On the first day of trial, the trial court ordered the doors of the courtroom locked during the testimony of the victim, who was sixteen years old. The trial court deemed two of the victim's counselors to be interested parties, and allowed them to remain in the courtroom. The victim then testified that on the evening of April 14, 1983, while her mother was at work, her step-father awoke her, forcibly raped her in the living room and performed deviate sexual acts. Following the incident, the victim returned upstairs to her bedroom and told her sister and brother that Morgan had "hurt" her again. The victim was referring to the fact that Morgan had committed the same offenses against her in September, 1980, for which he had been arrested and convicted.

Following the victim's testimony, Mary O'Keefe, a registered nurse present during the hospital examination of the victim, testified as to her observations during the

---

**1.** Morgan raised the claims presented in the petition before the Illinois Appellate Court. *People v. Morgan,* 152 Ill.App.3d 97, 105 Ill.Dec. 303, 504 N.E.2d 172 (1st Dist.1987). The Illinois Supreme Court denied leave to appeal. *Morgan,* 115 Ill.2d 547, 110 Ill.Dec. 462, 511 N.E.2d 434 (1987). The United States Supreme Court denied certiorari. *Morgan v. Illinois,* — U.S. ——, 108 S.Ct. 189, 98 L.Ed.2d 141 (1987).

examination. The record is silent on whether the courtroom doors were locked or unlocked during the testimony of Nurse O'Keefe or the victim's fifteen-year-old brother, who then testified as to his conversation with the victim on the night of the 1983 incident. When questioned about the prior 1980 sexual offense, the victim's brother could not remember what, if anything, had occurred between his sister and step-father. Following the brother's testimony, court adjourned for the day.

The next day, prior to the testimony of the victim's eleven-year-old step-sister, the court ordered all those not directly interested in the case to remain outside the courtroom. The witness then testified as to certain of the events which occurred on the evening of April 14, 1983. Next, the victim's mother testified as to the events surrounding the 1983 incident as well as the 1980 incident. Again the record is silent on whether the courtroom doors were unlocked during the testimony of the victim's mother. Regarding the 1980 offense, the mother stated that the victim, aged twelve at the time, told her that Morgan had had sex with her, and that following his arrest, Morgan admitted to the mother that he had sexually molested the victim. Morgan objected to the testimony regarding his admission to the prior offense on the ground that it violated the marital privilege and that the testimony exceeded the bounds for proof of other crimes. The trial court overruled Morgan, but agreed to admonish the jury that the evidence regarding the 1980 offense was being presented for a limited purpose.

Over Morgan's objection, Captain Roger Corray, Chief Investigator for the Champaign County Sheriff's Department, testified regarding the 1980 incident. Captain Corray testified that he had received a telephone call asking for his assistance in the investigation of a rape and deviate sexual assault allegedly committed by Morgan on his twelve-year-old step-daughter. Based on Corray's interview with the victim, her step-sister and her mother, Morgan was charged with rape. Officer Patrick Fitzgerald of the Park Forest Police Department then testified as to the investigation of the April 1983 incident.

The next day, Investigator Thomas Fikjeys of the Cook County Sheriff's Police Department and David Metzger, a forensic serologist, testified on behalf of the State. Following their testimony, the trial court denied Morgan's motion for a directed verdict. Both the State and Morgan rested and closing arguments ensued. Thereafter, the jury returned a verdict of guilty on all counts, and the trial court entered judgment on the verdict. The trial court sentenced Morgan to concurrent terms of twenty years for deviate sexual assault and rape, finding that the convictions for aggravated incest merged.

Morgan argues that (1) the exclusion of the public during the trial violated his right to a public trial; (2) the voir dire was inadequate to disclose the potential bias and prejudices of the jurors; (3) the admission of evidence of other crimes and the trial court's failure to limit the testimony concerning other crimes denied him a fair trial; and (4) the trial court's failure to properly instruct the jury as to the use of that evidence denied him a fair trial.

## III. RIGHT TO A PUBLIC TRIAL

■ Morgan contends that the exclusion of members of the general public from the courtroom during the testimony of the juvenile witnesses violated his Sixth Amendment right to a public trial, as applied to the states through the Fourteenth Amendment, *Duncan v. Louisiana*, 391 U.S. 145, 148, 88 S.Ct. 1444, 1446–47, 20 L.Ed.2d 491 (1968). Morgan also alleges the courtroom remained closed, not only during the testimony of the juvenile witnesses, but during the testimony of the adult witnesses as well. Morgan contends that he was thereby denied the right to a public trial.

After the state moved for the exclusion from the courtroom of all disinterested persons, the following discussion took place:

MR. BURNS [Prosecutor]: We are dealing with a rape of a 15–year–old child. I feel it is in the best interest of that child that the Courtroom be cleared of all those people, other than those who have

a direct interest in the case. Now, the Court is aware of the fact that the Statute directly provides that a child under the age of 13 years, that the Court shall do it upon a motion of either party. I would submit to the Court that considering the nature of the offense, the rape of a 15–year–old child by her step-father is the circumstances, are such that would justify the Court invoking its discretionary powers and entering such an order as I have requested.

THE COURT: Are you talking about the entire trial, or that part of the trial where the juvenile witness would testify?

MR. BURNS: It would be for the purpose of the time during which the juvenile witness and witnesses would testify. I would not ask that it be when the police officers or lab assistants testify. For the purpose, the Court may terminate the order and allow spectators, if he wishes, in the courtroom.

THE COURT: Very well. Do you wish to respond?

MR. CAPRIO [Defense Counsel]: Very briefly, your honor. [The victim] is now 17–years old. She might even be 18 now. But I am sure that she is at least 17, Judge. Secondly, I think we have a right to a public trial. I don't think that the State has indicated or made any showing at all that there is any harm or prejudice going to come to Miss Yates from testifying at a public trial.

THE COURT: Oh.

MR. CAPRIO: She is not 13, Judge, any more. She is 17 now.

THE COURT: I understand that. I don't see that the public nature of a case is being unduly hampered or destroyed by a partial exclusion of spectators. People having an interest in the case, of course, would be members of family for both the complainant and the defendant. Mr. Burns, I am sure, does not ask that the defendant's family also be excluded. Does he?

MR. BURNS: No, Judge.

THE COURT: You are just speaking about disinterested people?

MR. BURNS: Disinterested spectators, consistent with the intention of the Legislature when they drafted it at least as to 13–year–olds.

THE COURT: I would think in view of the age of the juvenile witness, 17, now—

MR. BURNS: She is 16, Judge.

\* \* \* \* \* \*

THE COURT: It isn't as if I were being asked to close the courtroom to any and all non-party spectators. But it would seem to me that the rather embarrassing, presumably embarrassing nature, that I think in the interest of justice would be best served by making this a public trial while the adult witnesses— for all adult witnesses' testimonies. But for the children, I think Mr. Burns' request is reasonable under all of the circumstances. It will be so ordered.

MR. BURNS: Thank you, your Honor.

THE COURT: The limitations will be analogous to the provision relating to witnesses of tender years. That is, if there were any media, they would certainly be permitted in view.

(T. 158–62).

The Sixth Amendment provides that "(i)n all criminal prosecutions, the accused shall enjoy the right to a ... public trial...." It has long been held that this provision generally guarantees the defendant the right not to have the courtroom closed over his objection, absent the need to protect a higher conflicting interest that can only be protected by closure. *See, e.g., United States ex rel. Lloyd v. Vincent,* 520 F.2d 1272, 1274 (2d Cir.) (citing cases), *cert. denied,* 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975).

In *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), the United States Supreme Court established the test for determining when the right of an accused to a public trial may give way to other rights or interests. *Waller* involved a suppression hearing closed over the defendant's objection. In this setting, the Supreme Court interpreted the public trial guarantee found in the Sixth Amendment. 467 U.S. at 43, 104 S.Ct. at 2214. The

Court adopted the test developed in *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), a First Amendment case concerning the right of the press to attend criminal proceedings. *Waller*, 467 U.S. at 48, 104 S.Ct. at 2216. The Court held that "the party seeking to close the hearing must advance an over-riding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding and it must make findings adequate to support the closure." *Id.*

The first prong of the *Waller* test requires an overriding interest that is likely to be prejudiced absent closure. In a First Amendment case, the Supreme Court recognized that safeguarding the physical and psychological well-being of a minor testifying in a rape case is a compelling state interest. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). The Seventh Circuit has stated that the exclusion of spectators during the testimony of an alleged rape victim is a frequent and accepted practice when the details of such crime must be related by a woman. *United States ex rel. Latimore v. Sielaff*, 561 F.2d 691, 694 (7th Cir.), *cert. denied* 434 U.S. 1076, 98 S.Ct. 1266, 55 L.Ed.2d 782 (1977).

In *Latimore*, the Seventh Circuit approved of the exclusion of spectators during the testimony of a 21–year–old victim in a rape case. The court stated:

"[r]ape constitutes an intrusion upon areas of the victim's life, both physical and psychological, to which our society attaches the deepest sense of privacy. Shame and loss of dignity, however unjustified from a moral standpoint, are natural byproducts of an attempt to recount details of a rape before a curious and disinterested audience. The ordeal of describing an unwanted sexual encounter before persons with no more than a prurient interest in it aggravates the original injury. Mitigation of the ordeal is a justifiable concern of the public and the trial court."

*Latimore*, 561 F.2d at 694–95. Applying *Latimore* and *Richmond Newspapers* to the present case, mitigating the ordeal to the victim and the juvenile witnesses testifying about their step-father's forcible rape of his step-daughter is a compelling state interest.

The second prong of the *Waller* test requires that the closure be no broader than necessary to protect that interest. As in *Latimore*, the closure order in the present case applied only to those witnesses likely to be hurt by testifying before disinterested spectators. The trial court's order applied only to the juvenile witnesses. The order did not apply to any other witnesses, including the victim's mother. Therefore, the partial closure, limited to the testimony of the juvenile witnesses, was not broader than necessary.

Third, *Waller* requires that the trial court consider reasonable alternatives to closing the proceeding. The trial court considered whether the closure would be limited or all-inclusive, and whether the media and family members should be present. The trial court favored the less onerous alternative of partial closure during the testimony of the juvenile witnesses. The trial court further lessened the impact of the closure by allowing interested persons, such as family and counselors, and the media to remain.

Finally, *Waller* requires the trial court to make findings adequate to support the closure. Prior to granting the motion, the trial court was aware that the testimony of juvenile witnesses would relate to the rape of a juvenile victim by her step-father. In granting the motion for limited closure, the trial court made the following findings: ["I]t would seem to me that [from] the rather embarrassing, presumably embarrassing nature [of the testimony], that ... the interest of justice would be best served by making this a public trial while the adult witnesses—for all adult witnesses testimonies. But for the children, I think Mr. Burns' request is reasonable under all the circumstances." (T. 162). Based on the trial court's finding that the testimony concerning the rape would be intimate and

embarrassing, the trial court made findings adequate to support the limited closure. Furthermore, the record amply supports these findings.

■ Morgan claims that the order was not limited to the duration of the juvenile witnesses' testimony, but he offers no evidence to support this assertion. Morgan has the burden of proving that the trial remained closed throughout the trial proceedings. *United States ex rel. Cross v. De Robertis*, 811 F.2d 1008, 1015 (7th Cir. 1987). He has not met that burden. The order entered by the trial court was limited to the duration of the juvenile witnesses' testimony. (T. 161). The record does not reveal any evidence that the order remained in effect after the testimony of the juvenile witnesses. Absent any evidence to support his assertion, Morgan's claim that the order was not limited to the duration of the juvenile witnesses' testimony must be rejected.

### IV. VOIR DIRE EXAMINATION

■ Morgan contends that during voir dire the trial court's refusal to ask the venire specific questions that he had submitted deprived him of his constitutional right to due process and a fair trial. Morgan submitted questions concerning (1) the nature of the charges; (2) the young ages of the occurrence witnesses; (3) the fact that several witnesses were police officers; and (4) Morgan's decision not to produce any evidence. Morgan also asked the trial court to ask these questions to each prospective juror individually rather than to the venire as a whole and, as a final question, that the trial court ask "[i]s there any reason why you would not want to sit on this jury?" (T. 41).

In the course of questioning the venire, the trial court asked the following general questions:

> Is there anybody here that has made up his or her mind about any issues in this case or any part of this case?
>
> *      *      *      *      *      *
>
> Does anyone here know of any reason why he or she can't give both sides a fair

and impartial trial and to keep an opened mind throughout?

*      *      *      *      *      *

Is there anything about the nature of this case that would bother you so that you could not be fair and impartial?

*      *      *      *      *      *

If the defendant Morgan decides not to testify and does not take the stand is there anyone here who would hold it against him because he didn't take the stand?

*      *      *      *      *      *

Is there anyone here who has any problem with [the] proposition [that the defendant is presumed to be innocent of the charge and must be proved guilty beyond a reasonable doubt] or object to that proposition?

(T. 58–60).

The Court finds no constitutional error in these questions. Morgan has not shown that the trial court clearly abused its discretion in not conducting or permitting the voir dire to Morgan's full satisfaction. *See United States v. Reynolds*, 821 F.2d 427, 429, 432 (7th Cir.1987). A trial judge is not required to put a question in a particular form or to ask a particular number of questions on a subject simply upon the request of a defendant. *Ham v. South Carolina*, 409 U.S. 524, 527, 93 S.Ct. 848, 850, 35 L.Ed.2d 46 (1973). The record indicates that individual prospective jurors responded to the trial court's group questions and that their responses were given careful consideration by the trial court. Therefore, based on all of the trial court's questions during the voir dire and its admonitions to the jury, the Court concludes that Morgan was not denied his right to a fair and impartial jury.

### V. ADMISSION OF EVIDENCE OF OTHER CRIMES

■ Morgan contends that he was denied a fair trial by the admission into evidence of testimony regarding his 1980 conviction against the same victim. At best, this argument presents a procedural error of state law. A federal court may not

grant a state prisoner habeas corpus relief for mere violations of state law. *Willard v. Pearson,* 823 F.2d 1141, 1149 (7th Cir. 1987), *citing Engle v. Isaac,* 456 U.S. 107, 119–121, 102 S.Ct. 1558, 1567–68, 71 L.Ed. 2d 783 (1982). Habeas review of such rulings is proper only in the case of egregious departures from accepted standards of legal justice. *Bell v. Duckworth,* 861 F.2d 169 (7th Cir.1988). The present case does not present such a departure.

The trial court acted within its discretion by admitting evidence of Morgan's prior sexual assault of the victim. Under Illinois law, evidence of prior acts between the defendant and complaining witness in a sex-related offense is admissible to show the familiar relation of the parties and to corroborate the complaining witness' testimony as to the act relied upon for conviction. *People v. Bradley,* 128 Ill. App.3d 372, 381, 83 Ill.Dec. 701, 708, 470 N.E.2d 1121, 1128 (1984). Morgan's 1980 conviction was for sexual offenses committed against the same step-daughter who is the victim in this case. The Court concludes that evidence of the 1980 offense was properly admissible to show the familiar relation of the parties as well as to corroborate the victim's testimony.

Morgan also argues that the excessive emphasis on the 1980 conviction deprived him of a fair trial. The Court reiterates that procedural error committed in the course of a state criminal trial is not a ground for federal habeas corpus relief. *Bell v. Duckworth,* 861 F.2d 169 (7th Cir. 1988). This fundamental limitation on habeas corpus may not be evaded by the facile equation of state procedural error with due process denial. *Id.*

The Illinois Appellate Court correctly characterized the limited nature of the testimony when it stated:

"[T]he record indicates that on the first day of trial the victim testified as to the 1980 sexual act in very limited detail. She merely stated that in September, 1980, defendant had raped her and that the police had been notified. Thereafter, the victim's testimony was corroborated in equally limited detail by her mother and the police officer who investigated the 1980 offense. None of these witnesses provided specific details.

*People v. Morgan,* 152 Ill.App.3d 97, 104, 105 Ill.Dec. 303, 308, 504 N.E.2d 172, 177 (1987). In light of the limited nature of the testimony, the Court concludes that the evidence of other crimes was not so excessive as to deny Morgan a fair trial.

## VI. ERRONEOUS JURY INSTRUCTION

Finally, Morgan argues that the "other crimes" instruction was erroneous. The jury was given the following instruction:

Evidence has been received that the defendant has been involved in an offense other than that charged in the indictment. This evidence has been received solely on the issue of absence of mistake of the identification of the defendant and defendant's design. This evidence may be considered by you only for the limited purpose for which it was received.

(T. 541). Morgan correctly points out that contrary to the jury instruction, the evidence regarding the 1980 offense was not received to show absence of mistaken identification of the defendant or the defendant's design. The evidence was introduced to show the familiar relationship between Morgan and the victim as well as to corroborate the victim's testimony.

To prevail on this claim, Morgan must overcome a heavy burden. *Cole v. Young,* 817 F.2d 412, 423 (7th Cir.1987). Instructional error will not support a petition for federal habeas corpus relief unless it is shown "not merely that the instruction is undesirable, erroneous or even universally condemned," but that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cole,* 817 F.2d at 423, *quoting Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977).

Morgan has failed to show that the erroneous instruction infected the jury's decision. An erroneous jury instruc-

tion is harmless when all the evidence adduced at trial establishes the defendant's guilt beyond a reasonable doubt, so that the reviewing court can conclude that the erroneous instruction did not contribute to the jury's verdict. *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460 (1986). In light of the overwhelming evidence which established Morgan's guilt beyond a reasonable doubt, the Court concludes that the jury instruction did not constitute constitutional error.

## VII. CONCLUSION

For the reasons stated herein, the Court denies Morgan's request for the issuance of a writ of habeas corpus.